## STATE v. RIVERS.

1. **Larceny**: FROM A RECEIVER: EVIDENCE OF QUALIFICATION. Where the indictment charged the larceny of property from the possession of a receiver, it was not necessary for the State to prove that the receiver had given bond and qualified as such. It was sufficient to show that he was an acting receiver under a proper order of court, and that defendant knew that he was so acting.

2. ——: ——: SECTION 3915 OF THE CODE NOT APPLICABLE. A receiver is not an "officer" within the meaning of section 3915 of the Code, which provides for the punishment of larceny where the property is in the hands of a sheriff, coroner, marshal, constable or other officer," by virtue of legal process.

3. ——: ——: POSSESSION: SPECIAL PROPERTY. Where goods are in the hands of a receiver as such, he has a special property therein, and, in an indictment for larceny, the ownership may be laid in him.

4. ——: ——: POSSESSION BY AGENT. Where the receiver notified the tenants of his appointment, and of his duty in regard to the crops, and the tenants thereupon agreed with the receiver that they would hold and manage the crops for him, and the grain was afterwards stolen, *held* that the possession of the tenants was the possession of the receiver, and that the indictment properly laid the possession in him.

#### ON REHEARING.

5. **Larceny**: FELONIOUS INTENT: FACTS CONSTITUTING. A felonious taking is a taking without color of right or excuse for the act, and an instruction requiring that, in order to convict, the jury should find that defendant, knowing that he had no authority to take the grain, knowingly and willfully, by himself or his employes, and with intent to deprive the owner thereof, took and carried the same away and converted it to his own use, imports the felonious intent necesssry to constitute larceny

*Appeal from Dallas Circuit Court.*

THURSDAY, JANUARY 18.

THE defendant was indicted for larceny. He was tried, convicted, and sentenced to the penitentiary for eighteen months, and he appeals.

*C. C. Cole* and *A. R. Smalley*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

ROTHROCK, J.—I. The indictment was presented on the sixth day of November, 1880, and it was charged therein that the defendant on the first day of September, 1880, stole three hundred bushels of flax seed, and five hundred bushels of oats, the property of Stephen Adams.

The grain which it is claimed the defendant stole was grown upon a farm in Dallas county, which, we infer from the abstract, the defendant once owned or had an interest in, but upon which there was a mortgage which had been foreclosed, and the property sold, and a sheriff's deed made therefor. Afterwards action was taken by the holder of the sheriff's deed to obtain possession of the premises. Pending this action, certain parties were in possession of the land as tenants of some one, but of whom does not clearly appear from the abstract. The tenants, either pending this action for possession or before it was commenced, sowed part of the farm in flax and oats. Pending the action, and on the twenty-fourth day of April, 1880, Stephen Adams was appointed receiver in said action, to take charge of the real estate in controversy pending the suit. Afterwards, on the twenty-seventh day of July, 1880, a further order of the court was made, directing the receiver to take charge of and control the crops upon the farm, and to harvest and dispose of the same, and to render an account of his doings in the premises.

It is claimed by the State that, after said appointment, and after Adams was authorized to take possession and control of the crops, he went upon the premises and made a contract with the tenants by which they were to harvest and thrash the oats and flax, and keep an account of the expense thereof, and haul the grain to market at a specified price per wagon load; and that, being thus in possession of the grain, the defendant by stealth caused some of it to be concealed under hay and straw in a slough, and in a cave, and hauled nearly all of it to market, and sold it as his own, and appropriated the proceeds to his own use.

In the trial of the case in the court below, no record evidence was introduced showing that Adams had given bond and qualified as receiver. He was permitted to testify as a witness that he had so done, and this is made the ground of complaint by appellant. We think that there was no necessity upon the part of the State to prove that a bond had been given by Adams, and that he was sworn as receiver. That he was an acting receiver under a proper order of the court, and that defendant, long before the commission of the acts with which he is charged, knew that he was so acting, abundantly appears from the evidence. The defendant was arrested and imprisoned for contempt in resisting the receiver, before it is claimed he committed the larceny.

*1. LARCENY from a receiver: evidence of qualification.*

II. Section 3915 of the Code is as follows: "If any person knowingly, and without authority of law, take, carry away, secrete or destroy any property or chattels, while the same are in the lawful custody of any sheriff, coroner, marshal, constable or other officer, and rightfully held by such officer by virtue of any execution, writ of attachment, or other legal process issued under the laws of Iowa, he shall be deemed guilty of larceny, and shall be punished, when the value of the property so taken, carried away, secreted or destroyed exceeds the sum of twenty dollars, by imprisonment in the penitentiary not more than one year; and when the value of the same does not exceed twenty dollars, by fine not exceeding one hundred dollars, etc."

*2. ——: ——: section 3915 of the code not applicable.*

It is urged that this is the only section of the statute under which the defendant could have been indicted, tried and convicted. We think that this cannot be so, because a receiver does not hold property under what is denominated a legal process issuing out of any court. He holds no process whatever. He acts under an order of the court, and he is not an officer within the meaning of that section.

III. It is further claimed that as Adams merely held the

property as receiver, the ownership cannot be laid in him,
but should be laid in the name of the real owner;
3. —— : ——— :
possession : that the appointment of the receiver did not di-
special prop-
erty. vest the owners of the right of possession or the
ownership of the property. This may be conceded to be cor-
rect, if the receiver was not in possession of the property when
it was taken by the defendant. If he was in possession of
the property, and it was stolen, the ownership might well be
laid in him in an indictment. Where a person has a special
property in a thing which has been stolen, the property in an
indictment for its larceny may be laid in the special or gen-
eral owner, and a party having mere possession as bailee or
pledgee of property has such an interest therein that the
ownership, may be laid in him in an indictment for its
larceny. *Burley v. Rose*, 57 Iowa, 651.

IV. A material question in the case is whether Adams
was in the possession of the property at the time it is claimed
4. —— : ——— : it was stolen. The court instructed the jury
possession by
agent. upon this branch of the case to the effect that, if
Adams, after his appointment as receiver, went to the farm
and notified the tenants then in possession thereof of his ap-
pointment as receiver, and of his duty thereunder in regard to
the crops and the tenants thereupon made a contract with
the receiver by which they were to assist him in harvesting
the crops, and taking them to market, and the receiver left
them on the premises for that purpose, then "the possession
of said tenants was the possession of their employer, to-wit,
Stephen Adams."

We think the proposition of law contained in this instruc-
tion is correct. If the evidence shows that the tenants who
raised the crops and were in possession of the premises peaca-
bly surrendered any claim they had thereto, and agreed with
the receiver that they would hold and manage the crops for
him, and the grain was afterwards stolen, the possession of
the tenants was the possession of the receiver, in the same
sense that it would be if the receiver had himself raised the

grain and put the other parties in possession thereof to harvest the same and haul it to market for him. In such case there can be no doubt the possession of the receiver would be sufficient to maintain an indictment in which the property is laid in him.

The jury were fully warranted from the evidence in finding that such an agreement was made, and the evidence does not show that Rivers was in the actual possession of the farm when the receiver made the contract with the tenants, but it does show that he was not in possession. It is true, it appears that he was claiming some right there to a share of the crop, probably as landlord. But there is no showing in the record that he had any legal right, either as landlord or otherwise.

Adams received only a small part of the flax seed raised on the farm, and he received none of the oats of which there were 500 or 600 bushels. Sometime after the appointment, Rivers and the parties in possession were arrested for contemptuously interfering with the receiver. They were imprisoned, and purged themselves of the contempt by executing a writing surrendering the grain to the receiver. After this, some one stole away the grain and sold it. We believe the jury were fully warranted in finding from the evidence that the defendant employed the teams which hauled the grain, and received the proceeds. Indeed, it appears to us without doubt that, after he surrendered the grain, he took it, hauled it away and sold it. It is true, it appears from the evidence that he owned or had control of other farms in the neighborhood, and that grain was hauled from them to the farm of which Adams was appointed receiver, and it is thus sought to show that the grain which he marketed was not that in controversy. But we think the jury were warranted in finding that he feloniously took and carried away that with which he is charged in the indictment. The fact that he employed others to take flax seed from the barn, and put it away in a slough, and cover it up and conceal it, and then haul it away

and sell it, hardly comports with the claim that the seed thus disposed of was his own.

We have examined this record with care. We find no error in it, either in rulings on the evidence or in the instructions of the court to the jury, and are united in the opinion that the judgment should be

AFFIRMED.


## ON REHEARING.

ROTHROCK, J.—We have again examined the record in this case, upon the petition of the defendant for a rehearing, and

5. LARCENY : felonious intent : facts constituting.

upon the rehearing we have been favored with an oral argument by counsel for the defendant. Upon the argument it was claimed that, under the eleventh instruction given by the court to the jury, a verdict of guilty was authorized, even though the defendant took and carried away the property under a claim of right, and without the felonious intent necessary to constitute larceny. That part of the instruction complained of, as it appears in the abstract and amended abstract filed by the State is as follows:

"Now if you (the jury) further find that afterward, and within three years next before the sixth day of November, A. D. 1880, the defendants, in Dallas county, Iowa, knowing of the said order of the said court, and of the acts of said Adams in qualifying as such receiver and taking charge of said property (if he did qualify and take charge of it), and knowing that he (the defendant) had no authority so to do, did by himself or by others, whom he employed, knowingly and willfully take and carry away the property mentioned in the indictment, or any part thereof, with intent to deprive the said Adams thereof, and to convert it to his own use, you should find him guilty as charged."

This instruction required that, in order to convict, the jury should find that Rivers knowing he had no authority to take the grain, knowingly and willfully, by himself or his

employes, and with intent to deprive Adams thereof, took and carried the same away, and converted it to his own use. We think this language imports the felonious intent necessary to constitute a larceny. A felonious taking is a taking without color of right or excuse for the act. Now it may safely be said that there was no color of right or excuse, if the defendant knew that he had no authority to take the property, and with this knowledge he knowingly and willfully carried it away and converted it to his own use.

There are other questions discussed in the petition for rehearing which we do not deem it necessary to again consider, and we adhere to the conclusion that the judgment of the District Court must be

AFFIRMED.