STATE OF IOWA, Appellee, v. CHARLES GILLAM, Appellant.

No. 45729.

NOVEMBER 12, 1941.

REHEARING DENIED FEBRUARY 20, 1942.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and Clair E. Hamilton, Special Assistant County Attorney, for appellee.

Edward L. O'Connor, for appellant.

SAGER, J.—■ This is an appeal from a second trial. A jury at the November, 1940, term of the district court disagreed seven to five. A search warrant was issued on July 18, 1939, signed by the county attorney on information and belief which fact forms the basis for a large part of appellant's complaint. Under the authority of this warrant appellant's tavern was

searched and something over twenty-two quarts of liquor in different sized containers were seized. There were also found four small glasses described as "shot" or whiskey glasses. Appellant argues that the search warrant not being based on probable cause was illegally issued. This may be conceded. Burtch v. Zeuch, 200 Iowa 49, 202 N. W. 542, 39 A. L. R. 1349; State v. Friend, 206 Iowa 615, 220 N. W. 59; Krueger v. Municipal Court, 223 Iowa 1363, 275 N. W. 122; State v. Doe, 227 Iowa 1215, 290 N. W. 518.

From this appellant proceeds to the contention that the court erred in overruling his motion to quash the evidence thus illegally obtained. He recognizes that under the doctrine of State v. Tonn, 195 Iowa 94, 191 N. W. 530, and like cases, we have adopted the rule that evidence is not inadmissible against the accused in a criminal case because illegally obtained. Our rule differs from that prevailing in the federal courts and in some state jurisdictions. But which rule is the better we are not called upon to decide now. The search warrant was issued in July, 1939, the indictment returned September 20, 1939, and the case went to trial in the November, 1940, term without a motion to quash or suppress this evidence being made. It was not until March 11, 1941, just prior to the second trial, that such motion was presented. We think that appellant's application was not seasonably made; and that he waived his right (if he had it) to suppress this evidence. As bearing somewhat on the question, see Dunn v. United States, 10 Cir., 98 F. 2d 119, 117 A. L. R. 1302.

Appellant contends that the court erred in overruling his motion for a new trial—this based on the proposition that he had no fair and impartial trial because Murray, one of the officers who took part in the search, was permitted to testify that punchboards were found on the back bar. Whether this would in any event have been prejudicial error need not be determined. The prompt and emphatic comment of the trial court to the effect that the appellant was not on trial for the violation of the punchboard law and that the jury give the matter no attention, removed any possibility of error. The same may be said with reference to testimony of the searchers that

they found slot machines. Here again the trial court told the jury to give this no consideration. The court went further. In terms crisp almost to the point of asperity the trial court directed counsel for the State to confine his inquiries to the subject matter of the case. See State v. Caringello, 227 Iowa 305, 288 N. W. 80.

There is no merit in appellant's claim that the State failed to establish the corpus delicti of the offense. This argument proceeds on the theory that the liquor seized was state-labeled and consequently, legally possessed. This may be conceded without admitting error. There was evidence from which the jury could have found that the appellant actually sold whiskey. It is not argued nor could it be, that liquor lawfully possessed might be vended over a tavern bar. We do not overlook his denial but a decision on the question of fact was for the jury.

Appellant complains that there was error in admitting evidence of the so-called whiskey glasses and the testimony with reference thereto. While the evidence is not very clear as to the size of these ''shot'' glasses they were conveniently located back of and under the bar. To accept the various lawful uses suggested by appellant to which they could be put as an excuse for their presence in the tavern requires a lack of sophistication to which we do not confess. Under this record we cannot say that the jury was wrong in its finding (if it did find) that these were used or intended to be used by appellant in his intent to violate the law.

Appellant insists that the court erred in giving Instructions No. 10 and No. 11. In Instruction No. 10 the jury was instructed ''that the possessor of intoxicating liquors may show in defense that the liquors found in his possession were sold to him legally * * * the burden is upon the defendant to show by the preponderance of the evidence this defense, and if he has established this defense by a preponderance of the evidence, and the further fact that he held * * * the intoxicating liquors * * * for his own use, then you should find the defendant not guilty.'' Instruction No. 11 defined the burden of proof, and what was meant by weight of evidence. Appellant cites in

support of his argument here State v. Wagner, 207 Iowa 224, 222 N. W. 407, 61 A. L. R. 882; State v. Taylor, 213 Iowa 67, 238 N. W. 457; State v. Grattan, 218 Iowa 889, 256 N. W. 273; Hoover v. Haggard, 219 Iowa 1232, 260 N. W. 540; State v. Sigman, 220 Iowa 146, 261 N. W. 538; and Tallmon v. Larson, 226 Iowa 564, 284 N. W. 367. None of these are in point. The other citations do not involve section 1966.2, 1939 Code, which had its inception in section 2, chapter 42, Laws of the Forty-first General Assembly. Most were decided before this law was passed.

It is insisted by appellant that the court erred in giving these instructions (Nos. 10 and 11) because the court did not tell the jury that the burden of proof on the whole case rested on the State to prove the guilt of appellant beyond a reasonable doubt. This point might be well taken if these instructions stood alone, but taking the court's instructions as a whole, there was laid upon the State its proper burden of proof.

Appellant's complaint that the court's instruction permitting the jury to convict the appellant if they found he kept for sale intoxicating liquor ''at any place'' is hypercritical and is like one disposed of in State v. Healy, 217 Iowa 1155, 251 N. W. 649.

Appellant's last complaint is that there was error in giving an additional instruction to the jury after it had deliberated from 4:35 o'clock p. m. on March 18th until 11 o'clock on the morning of the 19th. The verdict then stood seven to five, as it did when the jury was dismissed at the first trial. The jury having been brought into court on its own request made this statement:

'' * * * at this time I would like to state that we, the jury, practically since oh, I would say about 1 o'clock last night we have been standing at the same point as we are at this particular time, and we don't seem to be able to come to any conclusion. We have voted and voted and the vote remains the same and I don't see how we are gaining anything by trying it over again.''

At 11:40 o'clock a. m., March 19th, the trial court gave the instruction complained of and at 3:08 o'clock p. m. the verdict

of guilty was returned. Appellant charges that this prompt result was brought about by this (he claims) erroneous and coercive instruction:

"When you were summoned into open court your foreman stated that the ballot in the jury stood 7 to 5, and that your foreman indicated that you perhaps would not be able to agree.

"No doubt during most of this period of time you have been conscientiously working and attempting to arrive at a verdict in this case. It is not the thought of the Court that you should be kept together in an effort to arrive at a verdict in this case to the extent of doing any physical or mental injury to any member of this jury, and there has been no indication that you have, up to this time, been kept together on this case an undue length of time. The Court takes notice of the convenience of the jury room quarters with reference to the same being equipped with two adjoining rooms connected by an inner door with two separate lavatories and toilets and with separate cots and that said quarters are so convenient that no physical inconvenience should come to any of you. Your personal appearance here in court does not indicate that you have received any physical or mental injury from your deliberations so far in this case.

"It is, however, the duty of the Court to keep you together deliberating on this case as long as there is a probability of you agreeing on a verdict, and without any undue or harsh, or hard discomforts caused you in the matter. As you were told several times during the trial, this is a very important case between the parties litigant to it. This is the second trial of this case in this county, and the expense of jury cases is no slight matter, and juries should, if possible, arrive at a unanimous verdict in the causes submitted to them for decision. It is the judgment of the Court that it would be better for all parties to this litigation for you to agree on a verdict one way or the other. You jurors have been selected in the same manner that any future jurors will be, and there is no reason to believe that any jury better qualified will be chosen or more clearer evidence will be adduced. Every juror should listen to the arguments of the other jurors with disposition to be convinced by them. A proper regard for

the judgment of other men will greatly aid us in forming our own. The aim ever to be kept in view is the truth, as it shall appear from the evidence, examined in the light of the instructions of the Court.

"Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so, and in conferring together you should bear in mind that the jury room is no place for pride of opinion nor for espousing and maintaining a spirit of controversy on either side of a cause. It is advisable and it is the duty of the jury to agree to a verdict, and that no juror from mere pride of opinion, hastily expressed, should refuse to agree, nor on the other hand, should he surrender any conscientious views founded on the evidence, and that it is the duty of each of you to reason with your fellow jurors concerning the facts in the case, with an honest desire to arrive at the truth, and with a view of arriving at a verdict. A juror should not shut his ears and stubbornly stand upon the position he first takes, regardless of what may be said by other jurors. It should be the object of all of you to arrive at a common conclusion and to that end you should deliberate together with calmness."

This instruction eliminates the objectionable language which we have criticized in some of our decisions. It is supported by State v. Bogardus, 188 Iowa 1293, 176 N. W. 327, and Middle St. Util. Co. v. Incorporated Tel. Co., 222 Iowa 1275, 271 N. W. 180, 109 A. L. R. 66. As bearing on the general subject of instructions of this kind see note to Kesley v. United States, 85 A. L. R. 1418 [5 Cir., 47 F. 2d 453], and current supplements.

Finding no error in the rulings of the trial court its judgment is affirmed.—Affirmed.

MILLER, C. J., and GARFIELD, BLISS, WENNERSTRUM, OLIVER, HALE, and STIGER, JJ., concur.