STATE OF IOWA, Appellee, v. C. A. Cox, Appellant.

No. 47315.

(Reported in 34 N. W. 2d 616)

November 16, 1948.

Rehearing Denied February 11, 1949.

Lake M. Crookham, of Oskaloosa, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and L. R. Carson, County Attorney, for appellee.

Mulroney, J.—Defendant's appeal from his conviction of the crime of larceny of domestic animals questions the sufficiency of the evidence to support the verdict. Defendant was about twenty-seven years old and was living with his parents on a farm near New Sharon in August and the first part of September in 1947.

The indictment charged defendant with stealing six head of cattle, the property of one Madison Hull of Mahaska county. The record shows that Hull purchased eight head of red cattle from a sales barn in Grinnell about August 8, 1947. Millard Cox, defendant's father, was occupying a farm near New Sharon which he had sold to Tracy Everhart, with possession to be delivered to the purchaser September 1. Hull made arrangements with Millard Cox and Tracy Everhart for pasturing the cattle on the above farm and they were delivered to the pasture on this farm about August 12. Hull inspected the cattle on the farm from time to time and on the 17 or 18 of September he noticed six head were missing. Millard Cox did not actually deliver possession of the farm to Everhart until about the eleventh day of September. The sheriff and a state agent investigated the loss and learned that on September 9, 1947, defendant sold six head of red cattle to Wilson Brothers in Cedar Rapids for $944.94. The defendant was arrested at the home of his sister in Atlanta, Georgia. When returned to Iowa he

signed a statement to the effect that his cousin, Homer Cox, had come to his parents' home on the night of September 8 and asked him to go to Cedar Rapids in his truck and sell some cattle for him. The statement went on to say that Homer told him to sell the cattle in his own name and that he would pay defendant well, and that he accompanied Homer, sold the six head of cattle in his name, and Homer gave him $200 for his services. At the trial defendant testified the above statement was untrue. He testified his father told him to sell the cattle and he engaged Homer as trucker and, in accordance with his father's instructions, he helped Homer load the six head of cattle and sold them in Cedar Rapids for $944.94 and then gave the purchase money, less $25 paid to Homer, to his father, retaining, however, $219 which his father owed him. He said that at the time he took the cattle from the farm and sold them it was his understanding that the cattle belonged to his father.

Defendant was corroborated by his father, Millard Cox, who said that he told his son to sell his cattle off of this farm which he was vacating and that the cattle his son sold were his cattle.

I. We think the verdict was not against the weight of the evidence. There was ample evidence to show the cattle the defendant sold were the cattle owned by Madison Hull. The jury was not bound to accept the story of defendant and his father. Both had previously been convicted of a felony. At the time defendant sold the cattle he gave his right name but a fictitious address. He left the state shortly after he sold the cattle and wrote back to a girl in New Sharon and, in the course of the letter, told her "whatever you do don't tell anybody where I am" and he gave her instructions to answer his letter by a sealed letter inside an envelope addressed to his sister in Atlanta. When apprehended he signed a statement to the effect that he had sold the cattle at the request of Homer Cox, and later repudiated this statement. The father's story that the cattle were his was told for the first time at the trial, although the father knew of the charge against his son and was present at the preliminary hearing when his son was brought back from Georgia. He said he did not say anything at that time about

the cattle being his because he was not asked. Moreover, the father's testimony as to when and where he had purchased the cattle, which he said his son sold, was quite vague.

Defendant's testimony repudiating his earlier theory of defense as embodied in the written statement he gave the officers is rather evasive and uncertain. He testified most of the written statement was not true but "there are parts of it that is right." Here is a portion of his cross-examination with reference to the statement:

"Q. Did you make that statement? A. I could have told them anything—I was not under oath. That was talking maybe. Q. You say you did make that statement? A. I could have told them I was Samson, it would have been the same. Q. You made that statement? A. Yes. Q. It was true when you made it? A. It was not. Q. You were lying? A. Yes, I was. Q. You are not lying now? A. How do you know?"

II. The court gave the usual stock instructions and defendant complains that nowhere did the court present his theory of defense, namely, that if the jury found defendant was ordered by his father · to haul and sell the cattle and if they found defendant at the time believed the cattle were the property of his father, then they should find defendant was not guilty of larceny of said cattle.

Under the record, such an instruction should have been given. The State answers that no reversible error resulted in the failure to so instruct because no such instruction was requested, citing State v. Dale, 225 Iowa 1254, 282 N. W. 715, and State v. Christensen, 205 Iowa 849, 216 N. W. 710, and several other cases.· It is true that we have often said the defendant who fails to request an instruction on his theory of defense is in no position to complain when the court does not instruct on such theory. In State v. Wheeler, 216 Iowa 433, 435, 249 N. W. 162, we said:

"It was the duty of the court, without request therefor, to fairly present the issues to the jury in order that they might have a clear and intelligent conception of the questions before them for decision."

There was no issue as to the taking of the cattle. Defendant took them. He said he took them. He said at the time he took them and sold them it was his "honest understanding" and "honest belief" that those cattle belonged to his father. He is corroborated by his father. Clearly he would not be guilty of larceny if at the time he took the cattle he believed that they were his father's cattle, even though he was mistaken in such belief. State v. Schmidt, 239 Iowa 440, 30 N. W. 2d 473. Nowhere in the instructions was the jury told that if defendant believed the cattle were his father's he should be acquitted. As said in State v. O'Hagan, 38 Iowa 504, 507, "To omit to give instructions upon this essential part of the case and so clearly made by the testimony, was error * * *." See also State v. Brainard, 25 Iowa 572, 580; 23 C. J. S., Criminal Law, section 1324.

It can be said of this case as was said in State v. Brainard, supra:

"If the defendant had any defense, it was this, and in some way the attention of the jury should have been directed to it, and the law respecting it stated to them * * *. It may be urged against this position, that it was the duty of the defendant's counsel to have asked instructions on this subject, and if he failed to do so, he must take the consequences * * *. It is made the duty of this court to decide criminal appeals according to the very justice of the case as shown by the record, without regard to technical errors. It does not harmonize with the humane spirit of this statute to lay down the iron rule that the defendant must inevitably and in all cases be visited with the consequences of the omissions or errors of counsel."

It ought to be here stated that defendant's counsel upon appeal did not participate in the trial below.

III. Closely akin to the foregoing claim of error is the next assignment where defendant complains of instruction 12. In this instruction the court charged:

"The unexplained possession of recently stolen property justifies an inference that the property was stolen by the person in whose possession it is found. As applied to this case if you

find from the evidence beyond a reasonable doubt that Madison Hull was the owner of six head of cattle, that said cattle were stolen from the place where kept by the owner and were found in *the* possession shortly thereafter, this possession by the defendant, unless explained, would justify an inference on your part that the defendant stole said cattle."

■ ■ The defendant argues the above stock instruction given without any reference to his explanation of his possession of the said property was prejudicial error. We think there is much merit in defendant's position. The general rule is that unexplained possession of recently stolen property justifies an inference of the guilt of the possessor. State v. Sweetman, 220 Iowa 847, 263 N. W. 518; 32 Am. Jur., Larceny, section 140; 52 C. J. S., Larceny, section 151. But "where there is evidence in behalf of the accused tending to explain his possession of the stolen property, the jury should be properly instructed on the effect of such explanation." 52 C. J. S., Larceny, section 151b. By omitting any reference to defendant's explanation of his possession, the charge indicates that there was no explanation made sufficient to rebut the inference of guilt. The taking of the property by defendant was admitted. But the mere taking of personal property of another does not constitute larceny. State v. Schmidt, supra; State v. Peterson, 110 Utah 413, 174 P. 2d 843. The taking must be with felonious intent. Defendant accounted for his possession by the testimony that his father ordered him to take the cattle and he thought they were his father's cattle. The jury should have been instructed to acquit if they found such evidence was true. It is the very want of an explanation that gives rise to the probative effect of such possession of recently stolen property. 32 Am. Jur., Larceny, section 143; 101 Am. St. Rep. 504. As stated in Jackson v. State, 22 Okla. Cr. 338, 356, 211 P. 1066, 1073: "Under the evidence the trial judge should have given an instruction on the law as applicable to 'explained' rather than 'unexplained' possession."

See also Knight v. State, 73 Okla. Cr. 107, 118 P. 2d 255; Hunt v. State, 89 Tex. Cr. 89, 95, 229 S. W. 869, 873.

The injurious effect of the court's failure to instruct on

the defendant's theory of defense becomes more prejudicial here where the State is given the benefit of the recent possession charge, without a word said of defendant's explanation. As said in Hunt v. State, supra: "The court may not have believed it [the explanation of recent possession], and perhaps the jury might not; but the issue was there, and appellant was entitled to a proper charge on it."

We do not mean to hold we would in every case reverse because an instruction embodying defendant's theory of defense was not set forth in a separate instruction, when no request for such instruction was made, but when the court gave instruction 12 charging the jury as to the probative effect of unexplained recent possession of stolen property it was reversible error not to instruct as to the effect of such explanation as was given by defendant.

IV. Homer Cox, testifying for the State, said he trucked the cattle in question to Cedar Rapids at the request of defendant and that defendant paid him $25 trucking fee. Defendant argues that the record shows Homer was an accomplice as he too was arrested in connection with the theft of these cattle. Based upon this argument defendant asserts error in the court's failure to instruct the jury that Homer's testimony must be corroborated. We need not decide whether he was an accomplice or not. The defendant, in the trial of the case, told the same story, namely, that Homer Cox, at his request, trucked the cattle to Cedar Rapids and he paid him a $25 trucking fee. No reversible error could possibly result when defendant admitted the truth of the entire story told by Homer.

V. The defendant assigns error in the trial court's failure to grant a new trial based on an affidavit executed by one of the jurors. The juror stated in this affidavit that remarks concerning defendant's father being a bootlegger, and other derogatory remarks about the Cox family, were made by some of the jurors when the jury was deliberating on this case. The juror's affidavit also stated the instructions were not read in the jury room. Such matters inhere in the result and the affidavit was inadmissible to impeach or avoid the verdict. State v.

Hill, 239 Iowa 675, 32 N. W. 2d 398; State v. Dudley, 147 Iowa 645, 126 N. W. 812.

Because of the errors in instructions pointed out in Divisions II and III we feel the defendant is entitled to a new trial and the district court erred in refusing his motion made to obtain it.—Reversed.

SMITH, C. J., and OLIVER, BLISS, WENNERSTRUM, and HAYS, JJ., concur.

HALE, GARFIELD and MANTZ, JJ., dissent.