STATE OF IOWA, appellee, v. ROSE ELLEN PERRY, appellant.

No. 48553.

(Reported in 69 N.W.2d 412)

APRIL 5, 1955.

Joseph Z. Marks and Don Hise, both of Des Moines, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, Clyde Herring, County Attorney, Polk County, Theodore T. Duffield, Assistant County Attorney, Polk County, all of Des Moines, for appellee.

LARSON, J.—The defendant was indicted by the Grand Jury of Polk County, Iowa, charged with the sale and possession of alcoholic liquor in violation of section 123.3, Code of Iowa, 1950. She entered a plea of not guilty, was tried to a jury and found guilty. A motion for a new trial was overruled, judgment was entered on the verdict and, there being two prior convictions under the provisions of Title VI of the Code, defendant was sentenced to imprisonment in the Women's Reformatory at Rockwell City for a term of three years. She appeals.

The facts are not greatly in dispute. In the early morning of May 10, 1953, two Des Moines police officers, Limke and Goulden, in civilian dress, went to the Hawkeye Club where they purchased memberships for $1.00 each. They brought no liquor with them, but ordered and received from defendant two drinks each, paying for them with marked money. They testified the defendant placed bottles on the back bar which she said were to be their bottles, and on one of them she put a label and the number 981, which corresponded with the number on one of the cards issued to the officers. Officer Limke preserved part of his last drink. A few minutes later, the city vice squad raided the club and seized this liquid, the back bar bottles, shot glasses, and other equipment including some brand bottles found in the back room. All were taken to the police station. The liquid later was delivered to the Iowa Lutheran Hospital biochemist for

864

testing. This test showed the liquid to be 87.2-proof whiskey. The officers testified they paid 50c for each drink served them by the defendant and that the drinks poured for them did not come from the Calvert's brand bottle which defendant had assigned to them, but from another bottle on the back bar bearing a Schenley label. Both officers further testified they were acquainted with the taste and smell of whiskey and could so identify it, and Officer Limke said he would say "it was an alcohol."

Defendant testified in her own behalf as follows: "On the 10th of May, 1953, I was helping my husband at the bar. * * * I first saw them [the officers] when my husband called me to the door. He asked me to take their applications and register them. They made out formal applications for entry to the club and were issued cards. * * * After taking their applications I walked back to the bar. * * * they came out to the bar. They did not hand me any bottle. I did not put their name on any bottle. The bottle with the label attached was brought to the end of the bar and placed there by Mr. Perry. I do not know where he got that bottle * * *. I did not sell any whiskey to Mr. Limke or Mr. Goulden. I did pour a fluid from a bottle into a glass for Mr. Limke and Mr. Goulden. That bottle was number 981. * * * I served them what we call chasers. It is either a 7-Up or a chaser, [of] coke or water. There is a charge for the chaser and I received money for that. I think both of them paid. I think I served two to one and three to the other and on each occasion I also served a chaser. On the 10th of May there were no bottles that may have contained intoxicating liquor at the Hawkeye Club which did not bear the name of one of the members. The members themselves brought these bottles to the club with their names on them."

On cross-examination she denied that they changed the name or number tags placed on the bottles in such a manner that if the place were raided there would be labels on the bottles setting out on the back bar to coincide with the persons who were in the key club, and that such explanation accounted for the fact that the labels on the outside of the bottles were torn.

■ I. From her first two assigned errors we understand defendant contends the operation is within the exception to the

general prohibition section of the Iowa Liquor Control Act (section 123.3, Code of Iowa, 1950) in that the alleged Hawkeye Club was a private place rather than public. She complains because the trial court failed to instruct upon this, her theory of the case. She admits, however, that she did not offer or request any such instruction. We have often said the defendant who fails to request an instruction on his theory of defense is in no position to complain when the court does not instruct on such theory. State v. Anderson, 240 Iowa 1090, 1098, 38 N.W.2d 662; State v. Cox, 240 Iowa 248, 251, 34 N.W.2d 616, 619; State v. Schenk, 236 Iowa 178, 194, 195, 18 N.W.2d 169, 177, and citations; State v. Wilson, 235 Iowa 538, 545, 17 N.W.2d 138, 142, and citations; State v. Dale, 225 Iowa 1254, 1257, 282 N.W. 715. This is especially true when the theory of defenses is special. See State v. Christensen, 205 Iowa 849, 852, 216 N.W. 710, 711; State v. Kendall, 200 Iowa 483, 203 N.W. 806.

Defendant contends she was entitled to a specific instruction on certain specified evidence offered by her, viz., that if the jury found this a private club, and the liquor was the property of the members and was only served them by the defendant from their own liquor, and the charge made was only for the water, 7-Up or other "chaser", and for service, then she was in possession under the exception of the Iowa Liquor Control Act. We shall not attempt to pass upon the propriety of such an instruction in view of the fact no request for such specific instruction on such alleged specific evidence was requested, and no error was committed by the court's failure to so instruct. In State v. Schenk, supra, we said at page 195 of 236 Iowa, page 178 of 18 N.W.2d: "It seems to us that the claim of defendant is that the trial court should have instructed as to certain specified evidence offered by him. We have held that it is not necessary, in the absence of a special request for instructions relating to the bearing of specific evidence, to instruct as to such matters of evidence." (Citing State v. Seevers, 108 Iowa 738, 78 N.W. 705.)

While it is generally true an accused person is entitled to have his theory of the case explained to the jury and the law applicable thereto stated, unless the accused person requests in-

structions or in some manner calls to the trial court's attention his special theory, he cannot be heard to complain of the court's failure. We have also said we will not reverse for failure to give instructions not asked unless it clearly appears such omission deprived the accused of a fair trial on the merits and resulted in an obvious miscarriage of justice. State v. Wilson, 234 Iowa 60, 11 N.W.2d 737; State v. Critelli, 237 Iowa 1271, 24 N.W.2d 113; State v. Holoubek, 246 Iowa 109, 66 N.W.2d 861; State v. Baker, 246 Iowa 215, 66 N.W.2d 303, and cases cited therein.

The court's duty to instruct in such matters is confined to "material questions of law in the case", whether requested or not, but this would apply only where relevant evidence was produced which would make apparent the materiality of the law claimed applicable thereto. State v. Cox, supra, 240 Iowa 248, 251, 34 N.W.2d 616, 619; State v. Helm, 97 Iowa 378, 385, 66 N.W. 751, 753. Even though defendant's contention under the exceptions of the Iowa Liquor Control Act was properly called to the trial court's attention, we do not believe it would have been sufficient to require such an instruction, as the evidence introduced does not bear out defendant's theory.

II. In this connection defendant complains of Instruction No. 4, which in part states: "The possession of alcoholic liquor for the purpose of serving it to the public in a club, or the serving of the same to customers in a club, is unlawful and is a violation of the Liquor Control Act and makes its possession under such circumstances unlawful."

Defendant also points to parts of Instructions No. 6 and No. 7, which she claims are not the law applicable to a private club rendering certain services to its bona fide members. We are not impressed with the argument. It is fundamental in a criminal case that all the instructions should be read together, to determine their adequacy and correctness. State v. Warren, 242 Iowa 1176, 47 N.W.2d 221; State v. Katz, 241 Iowa 115, 40 N.W.2d 41; State v. Blackburn, 237 Iowa 1019, 22 N.W.2d 821; State v. Healy, 217 Iowa 1155, 251 N.W. 649; State v. Boever, 203 Iowa 86, 210 N.W. 571. The giving of instructions is governed largely by the evidence. State v. Johnson, 222 Iowa 1204, 271 N.W. 223. The defendant's possession of this liquor under

the law was illegal unless she held it by virtue of the exceptions to the general prohibition, and the burden rested upon her. She admitted she knew the officers were strangers and had no bottle when they came in, and yet she served them alcoholic drinks. Furthermore, section 123.5, Code of Iowa, 1950, subdivision 19, provides:

" 'Public place' includes any place, building or conveyance to which the public has or is permitted to have access and any place of public resort."

Defendant contends there was no evidence this club was a public place. There was none that it was otherwise. It is an affront to a court's intelligence to contend this so-called Hawkeye Club was not a public place. To admit perfect strangers to a clubroom upon the payment of a one-dollar fee and no other requirement, qualification or identification, clearly falls short of proof, even inferentially, that such a place was private. The designation of "club" means little or nothing without substance. Here the evidence was clear that nothing was required for admission except the payment of one dollar, and a jury could not be permitted to find that the Hawkeye Club under this evidence was a private place. We believe the trial court was correct in referring to "the possession of alcoholic liquor for the purpose of serving it to the public in a club, or the serving of the same to customers in a club." The officers were not members of a private club, but were mere customers who paid a cover charge to enter a public club.

It is not surprising defendant did not ask clarification of nor object to these instructions when given. It is perfectly clear she could not gain by further emphasis of the subterfuge by asking further court instructions· Defendant suffered no prejudice by these instructions. Furthermore, there was ample evidence from which the jury could find defendant actually sold whiskey, and of course that would be illegal in or out of a private club. It is not argued, nor could it be, that liquor lawfully possessed might be vended over a private or public bar. Thus the real fact question for the jury involved in this case was, Did defendant sell liquor to the officers in that place at that time? It was to this issue her plea of not guilty was addressed. In State v. Gillam, 230 Iowa 1287, 1290, 300 N.W. 567, 568, we said: "To

accept the various lawful uses suggested by appellant to which they could be put as an excuse for their presence in the tavern requires a lack of sophistication to which we do not confess."

We are satisfied these instructions were correct.

■ III. Defendant further complains of Instruction No. 12, which provides in part as follows:

"* * *

"You are to try and determine this case according to the law as given you in charge by the Court in these instructions and the evidence produced and submitted to you in open Court, taking into consideration all the facts and circumstances as disclosed by the evidence, as well as the lack or want of evidence, if any, and you will consider all fair and reasonable inferences and deductions which may be drawn therefrom.

"You are the sole judges of the facts in this case, and the Court instructs you as to the law. The Court has not, however, attempted or intended to embody in any one instruction all of the law applicable to the case. You are to consider and construe all of the instructions together and apply them as a whole to the evidence in the case."

■ Defendant contends the second paragraph instructs the jury to take into consideration the lack or want of evidence in deciding the guilt or innocence of the defendant. We do not agree. Nowhere therein is the question of defendant's innocence or guilt mentioned. See our most recent pronouncement on this matter in State v. Doss, 246 Iowa 651, 653, 67 N.W.2d 451, 452. Of course the rule is well settled that the State must prove defendant's guilt by evidence, not by a lack thereof. Lack of evidence of guilt may be considered only as a basis for a reasonable doubt of guilt. Such a doubt may lead only to an acquittal, not a conviction. Trial courts should use great care to avoid any statement or implication in their instructions that a conviction may be based on a lack or want of evidence of guilt.

It is difficult here to believe the jury could have been confused or misled by this instruction, and we hold it was not. We have considered similar instructions in several recent cases. See State v. Doss, supra, where we said the use of such language appeared "cautionary" and that it did not amount to reversible

error. Also see State v. Sauerbry, 233 Iowa 1076, 1083, 1084, 10 N.W.2d 544, for a like result and for a full discussion, with citations; State v. Matthes, 210 Iowa 178, 180, 230 N.W. 522, 523. We conclude the meaning of Instruction No. 12, especially when read with other given instructions, did not advise that defendant could have been convicted on a lack of evidence, and therefore we find no error in the assignment.

IV. The next assignment of error relates to the admission into evidence of numerous exhibits. Exhibits S through W were five bottles which were taken from the back bar of the Hawkeye Club by the raiding officers. Exhibit B was a bottle Officer Ferguson took from the back bar and on which was the number 981. They were all taken to the police station and placed in a locker by Ferguson, who was one of the raiding officers.

Exhibit A-3 was the coke bottle in which Officer Volz poured the liquid from Limke's drink, capped it and turned it over to Officer Ferguson to take to the station. There he sealed it and put it in the locker. On May 11 he took it to the hospital biochemist for testing, and returned the balance to the locker.

Exhibits D through Q were thirteen bottles found in the back room of the Hawkeye Club that morning and turned over to Ferguson, who also took them to the station and placed them in the locker. Complaint is made that another officer besides Ferguson had a key to that locker. The implication that he disturbed the exhibits is too remote for serious consideration without other circumstances of possible disturbance. There were none. All exhibits were later delivered to Captain Volz, who took them before the Grand Jury. At the trial Officers Ferguson and Purdy and Captain Volz all testified the exhibits were in substantially the same condition as when they took them from the club, and to the best of their knowledge none of the contents was changed while in their possession, and further that the bottles all appeared to be in the same condition as the time they first saw them in the club.

It is true it must appear that a continuous chain of control was exercised over any such exhibit which is offered into evidence, and that the exhibit was in substantially the same condition when offered as when seized. If there is sufficient

proof that the exhibits offered were the same as those taken, and their contents were in the same condition when analyzed and introduced as when taken, they are admissible. The preliminary proof in this respect is for the court. State v. Kingsbury, 191 Iowa 743, 183 N.W. 325; State v. Reid, 200 Iowa 892, 205 N.W. 517; State v. Sigman, 220 Iowa 146, 261 N.W. 538; State v. Weltha, 228 Iowa 519, 292 N.W. 148. However, the factual situation in the above cases cited by the defendant is not similar to the case at hand. Those exhibits were left easily accessible for unknown persons to tamper with or replace. Here the foundation as to their care and custody was properly laid as justification for receiving the testimony of the officers, who concluded that the exhibits in the trial were in the same condition as at the time of seizure. We have carefully reviewed the evidence and find no evidence of a reasonable opportunity for any alteration, and conclude therefore that the court was not in error in accepting these exhibits into evidence. They were in the custody and control of officers of the vice squad, and though Officer Collins was not called to testify he had not molested the exhibits, there is nothing to indicate this vice-squad officer opened the locker after the exhibits were placed therein. His failure to testify was not reversible error. See State v. Barton, 202 Iowa 530, 210 N.W. 551; Critelli v. Tidrick, 244 Iowa 462, 56 N.W.2d 159.

Defendant complains that bottles from the back room were introduced with no showing she had knowledge of, custody or control over them, and that this was error. We do not agree. We have often said in matters of this kind that all articles and property related to the scheme to sell and dispense liquor seized at the time and place had a material bearing on the issue and were admissible. Great latitude is extended the trial court in determining their relevance and materiality. We discussed this proposition thoroughly in State v. Rand, 238 Iowa 250, 264, 270, 25 N.W.2d 800, 807, 808, 170 A. L. R. 289, 300, where we said: "It is thus seen that the admissibility of such testimony is all a matter of relevance." We have often held in prosecutions for liquor law violations, liquor and connected articles properly identified as having been in the possession of the accused or otherwise connected with his operation, as well as testimony connected therewith, are admissible. See Critelli v. Tidrick, supra; State v.

Phillips, 212 Iowa 1332, 236 N.W. 104; State v. Williams, 245 Iowa 494, 62 N.W.2d 742. We conclude here the foundation laid, plus the testimony of the officers as to custody and condition, were sufficient to justify their admission, and no error appears therein.

V. Defendant contends the trial court erred by refusing to require Robert L. Perry, defendant's husband, to testify, and refers us to the provisions of Code sections 622.14 to 622.16 inclusive, Code of Iowa, 1950. In part, they provide when a matter sought to be elicited would tend to render a witness criminally liable, or to expose him to public ignominy, he is not compelled to answer, except "in prosecutions or proceedings for violations of the statutes relating to intoxicating liquors, * * *." Defendant called her husband to the stand as a defense witness. He claimed his privilege under section 622.14 when asked what his connection was with the Hawkeye Club. He stated he could not answer "for it might incriminate me." The trial court did not require him to testify and he was excused. Defendant excepted and claims this reversible error.

Defendant cites no Iowa cases interpreting our immunity sections, and we have found none. It is her claim that by the broad and general terms of these provisions the benefit of the statute is intended for both the prosecution and the defense. The trial court held only the State was permitted under our law to force testimony in such matters. Section 622.16, Code of Iowa, 1950, now 1954, provides:

"No person compelled under section 622.15 to testify or produce evidence tending to incriminate him * * * shall be prosecuted for any crime which such testimony or evidence tends to prove or to which the same relates. * * *."

We believe these statutes relate to the considered judgment of the State to grant immunity from prosecution in return for desired evidence, and in that view we are supported by history, reason and ample authority from other jurisdictions. Unless one claims his privilege under the statute, any testimony he may give may be used against him. When he claims his privilege, it is as to such excepted testimony an offer to testify if he be granted immunity from prosecution. A defendant could grant no such immunity, nor should he be able to do so to the end that many serious law violators may escape prosecution.

We considered the breadth of our immunity statute (section 622.16) in the recent case of Koenck v. Cooney, 244 Iowa 153, 55 N.W.2d 269, where Judge Hays points out the purpose of sections 622.14, 622.15 and 622.16. Section 9, Article I, of the "due process" provision of the Iowa Constitution includes the right against self-incrimination. It has been held that if the State allows immunity against prosecution by the government, when it compels him to testify, it is equivalent to the protection furnished under the constitution. United States v. Murdock, 284 U. S. 141, 52 S. Ct. 63, 76 L. Ed. 210, 82 A. L. R. 1376. In the Koenck case we considered the Acts of the Fortieth General Assembly which made some significant changes in our immunity section, then section 4612, Code Supplement, 1913, and this court held (page 158 of 244 Iowa) : "It applies not only to the particular cause under consideration but likewise to any and all others that may be based upon, or developed as, the result of such testimony or evidence." The coverage is broad and complete.

This matter has been considered in other jurisdictions. It arose in Brady v. United States, 8 Cir., Iowa, 39 F.2d 312. Under a federal statute not unlike ours, the court said at page 314: "Literally construed, this section (section 30, title 2, c. 85) does apply to all witnesses subpoenaed to testify with reference to any alleged violation of the prohibition laws, but we are clear that properly construed it applies only to witnesses subpoenaed by the government."

It was pointed out therein that the literal import could not be accepted in arriving at the legislative intent, and that various considerations of statutory construction reject such an interpretation, which would make it applicable to witnesses called by the defense. These considerations strongly limit and control the section's terms to apply to witnesses for the prosecution only. Immunity provisions originated in prior laws which authorized the prosecution to offer immunity to some involved persons if they would testify for the government in prosecutions of others likewise involved. They were considered an aid to accomplish justice, where, because of the involvement of many, evidence to prove guilt beyond a reasonable doubt could not be obtained. The object then was to prevent the failure of prosecu-

tions solely for the reason vital evidence could not be obtained. It was a needed exception to the constitutional or statutory right to refuse to testify against oneself. There was no such compelling reason to aid the defense, and the general policy of the law is not to set aside the prevailing law by a general statute unless it is expressly or necessarily required. The need for its application for the defendant has not appeared.

Then again such a statute must not be given an interpretation that could possibly result in an absurdity. As pointed out in the case of United States v. Ernest, 280 F. 515, 517, by way of illustration: "A. and B., jointly accused and tried, each could refrain from testifying for himself, but could subpoena and call the other, both testify as witnesses only, and the case would end in dismissal as to both, a judicial farce. Or of six involved, one known, accused, and tried could subpoena and call the others, and confer upon them an immunity bath." It was pointed out that the settled law rejects construction involving absurd and unjust consequences, if any other construction be reasonably possible. It was decided there the literal import of merely general terms, which could cover prosecution and defense, will be controlled and limited to avoid results of that character, and to that end it will be presumed that the legislature intended exceptions to be inferred. The court said: "The presumption, sometimes a violent one, is that the Legislature avoids absurdity and injustice." Also see 3 Wharton's Evidence in Criminal Cases, Eleventh Ed., section 1131, page 1968, which states: "The protection granted by immunity statutes extends only to witnesses called and used by the prosecution, and does not apply to witnesses for the defense."

The question was later considered in Smith v. United States, 5 Cir., Tex., 58 F.2d 735, 736, and again the court held: "Although the language used is broad enough to include witnesses for the defense, it was clearly intended to protect only witnesses who appear in obedience to a subpoena and testify truthfully on behalf of the government."

Also see for the same result State v. Archambault, 72 Mont. 259, 262, 232 P. 1107, where it was pointed out that the immunity statutes' purpose was to aid, not defeat, the State's efforts to

punish those guilty of offenses against the people. We found no authority to the contrary.

These holdings and reasonings are persuasive and we are inclined to follow them, there being no showing made by defendant that they are wrong in reason or that to follow them would be violative of some constitutional or statutory provision of this State.

We conclude that a construction of these statutes that would tend to defeat its very purpose cannot be entertained. The ruling of the trial court therefore was not error.

Finding no merit in any of the assignments of error, we conclude the defendant had a fair trial, ably represented by counsel, and that there was ample material evidence to sustain the verdict of guilty returned by the jury.—Affirmed.

All JUSTICES concur.