**STATE of Iowa, Appellee,**

v.

**Kenneth Raymond LINK, Appellant.**

**No. 53418.**

Supreme Court of Iowa.

Oct. 14, 1969.

I. Joel Pasternak, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

MASON, Justice.

Defendant Kenneth Raymond Link appeals from judgment following jury verdict convicting him of larceny from parking meter—erected and maintained by the city of Des Moines—contrary to Code section 709.25, as charged by indictment. After overruling defendant's motion for new trial the court sentenced him to the state penitentiary for a term not to exceed one year.

Chapter 413, Acts of the Sixty-second General Assembly, effective May 26, 1967, which will appear as Code section 709.25 in subsequent Codes provides:

"If any person opens, steals, takes and carries away, or attempts to open, steal, take and carry away monies, regardless of the value or amount thereof, from a parking meter erected and maintained by a city or town pursuant to section three hundred ninety point seven (390.7), he shall be guilty of larceny from a parking meter and upon the first conviction thereof he shall be punished by imprisonment in the penitentiary or county jail for not more than one (1) year, or by fine of not more than five hundred (500) dollars, or by both such fine and imprisonment; upon each subsequent conviction thereof he shall be punished by imprisonment in the penitentiary for not more than five (5) years, or by fine of not more than one thousand (1000) dollars, or by both such fine and imprisonment."

I. Two of defendant's assignments of error are based on failure to direct a verdict in his favor at the close of State's evidence and at the close of all evidence.

These assigned errors raised the question of sufficiency of evidence to generate a jury question on the charge in the indictment.

In State v. DeRaad, Iowa, 164 N.W.2d 108, 109–110, we set forth certain rules applicable in considering these two assignments:

"On appeal by defendant based on claimed insufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the State. The finding of guilt by the trier of fact is binding on us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. * * * [Citing authorities].

"However, the State must prove all essential elements of the crime charged and mere presence at the scene of a crime is not enough to prove defendant committed the offense. State v. Daves, * * * 259 Iowa [584] 585–586, 144 N.W.2d [879] 880–881, and citations.

"In State v. Frink [255 Iowa 59, 64, 120 N.W.2d 432, 435], State v. Wimbush [260 Iowa 1262, 1264, 150 N.W.2d 653, 654], both supra, and State v. Horrell, 260 Iowa 945, 948, 151 N.W.2d 526, 529, we quote this from State v. Miskell, 247 Iowa 678, 686–687, 73 N.W.2d 36, 41:

" 'In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. [Citing authorities] * * * [T]he State's evidence, with all reasonable inferences therefrom, must be taken as true and viewed in the light most favorable to the State, and it is necessary to consider only the evidence which tends to support the verdict.'

"Either direct or circumstantial evidence, or both, on each and every essential element to conviction is sufficient to warrant a finding of guilty, if it satisfies triers of facts beyond a reasonable doubt. For this purpose circumstantial evidence may be equal in value to and sometimes more reliable than direct evidence. See State v. Manly, 211 Iowa 1043, 1050, 233 N.W. 110, 113, and State v. Heinz, 223 Iowa 1241, 1255, 275 N.W. 10, 19, 114 A.L.R. 959. However, where circumstantial evidence alone is relied on as to any one or more of essential elements the circumstance or

circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged. * * [Citing authorities]."

Many of the above rules are again set out in State v. McClelland, Iowa, 164 N.W. 2d 189, 197 and State v. Kittelson, Iowa, 164 N.W.2d 157, 161–162, where we quoted this from State v. Daves, supra, 259 Iowa at 586, 144 N.W.2d at 881:

"Any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must generate something more than suspicion, or speculation, or conjecture. * * * [Citing authorities]."

Defendant contends in support of these assignments (a) the State failed to prove the crime of larceny from a parking meter in front of O'Dea Finance Company, Des Moines, July 4, 1968, had actually been committed, (b) the State failed to prove he committed the larceny or aided or abetted another in so doing.

He thus challenges the sufficiency of the evidence to establish the corpus delicti and to connect him with the crime charged. As argued, we consider these contentions together viewing the evidence in the light most favorable to the State.

George L. Wolfe, Des Moines city treasurer, testified the parking meters in the vicinity of 11th and Locust are owned by the city and Overton Pickett was the meter collector in that area. Collections were ordinarily made Mondays and Thursdays but this time it was Monday and Friday because Thursday was the Fourth of July. Although a penny might activate these meters Wolfe doubted if a quarter would fit the meters in the vicinity of Locust between 11th and 12th.

Pickett testified he collected money from the meters in front of O'Dea Finance on Mondays and Thursdays. He estimated that Monday, July 1, these meters con-

tained an average of $1. Friday, July 5, these same meters contained 10 to 20 cents. They are operated by nickels and dimes. Once in a while he found a few pennies.

Orbie Boggs, janitor at O'Dea Finance, 1117 Locust Street, Des Moines, testified that about 9:45 a. m. July 4, 1968, while inside the company premises he saw defendant and a man later identified as Leo Bowen in front of the building by a parking meter. The meter flap, habitually fastened by a lock, was open. As Boggs left the window to call another employee, the men walked away. The flap was then closed and no one else was in the vicinity. The two men entered a pink Rambler parked facing north on 12th Street.

Boggs later saw the two men near another parking meter on 9th between Locust and Grand. He then notified police and gave a description of the men, later showed police location of the two meters and identified the men in a police lineup.

Ruth Tollie, grill cook at the T & T Buffet at 9th and Grand, testified she was at work July 4 when defendant and Bowen entered the bar, sat near the end and ordered two beers. Just before the police came in defendant had gone around the corner of the wall separating the front bar from the back room where the restrooms were located. As he did so defendant was out of the witness' sight. The other man had moved toward the front, when the police car drove up and parked, he went back and sat down. Defendant returned shortly and joined him. Witness said that at no time while defendant and his companion were in the bar had anyone else gone to the back part of the restaurant. After questioning the men, the police asked Miss Tollie if they had moved from the stools. Although the record does not show her answer it is fair to assume her reply was the same as her testimony.

Wade B. Johnson and Earl Purcell, the two policemen who talked to and arrested defendant and Bowen in the tavern, were also called as State witnesses. Purcell tes-

tified the men were asked to empty their pockets on the bar countertop. Bowen did not have many things but defendant had quite a lot of change and a number of bills. Purcell said he looked through the change and it consisted of nickels, dimes and pennies. He did not observe any quarters at the time. After arresting the two men the officers at defendant's request returned them to his car to permit defendant to pick up a sack of money from the glove compartment. They then proceeded to the police station. During the booking process defendant was again asked to put his possessions on the countertop. It was the same money Purcell had seen in the tavern. There were no quarters. Defendant had placed the sack of change taken from his car on a bench. After defendant had emptied his pockets Purcell asked him to pick up the sack, place it on the counter, specifically telling him to keep this money separate. Purcell said defendant deliberately mixed the money.

Later Purcell, Johnson and two other officers returned to the tavern to search for a parking meter key which detective Weichman found. The officers then returned to the parking meters in front of O'Dea and at 9th and Locust. They opened three meters in front of O'Dea by using the key found by Weichman. They were all empty. The meters checked were operated by nickels and dimes, quarters would not fit. Although pennies could be deposited, they could not activate the mechanism.

Johnson corroborated much of Purcell's testimony.

Weichman came into the tavern while Purcell and Johnson were talking to defendant and Bowen at the bar. Weichman said he noticed a quantity of change consisting of nickels, dimes and pennies on the bar in front of defendant. He did not see any quarters. Weichman then searched for a meter key in the restroom and hallway area. He failed to find one. As defendant and Bowen were being taken from the tavern Weichman went outside to talk to two other officers and in a few minutes returned and made another unsuccessful search.

Weichman later met Boggs in front of O'Dea where Boggs pointed out the particular meters. They returned to the station and after Boggs identified defendant as one of the men involved, Weichman returned to the tavern, made another search and found a key under a mop bucket in the hallway. He returned with other officers to the meters in front of O'Dea, opened them with the key found in the tavern. They were empty.

Harlin G. Speck, another police officer called to the tavern, told of observing the change on the bar and being told it belonged to defendant. Speck was one of the officers who took defendant to the police station after making the stop at the Rambler for defendant's money sack. Speck also testified that while being booked defendant deliberately mixed the money from his pockets with the money from the bag taken from the glove compartment.

Defendant, the only defense witness, testified he and his wife had been operating his brother's restaurant on Locust in Des Moines since September 1967, twenty-four hours a day except Monday. He had gone to work the afternoon of July 3, worked through the night and then with Bowen's help installed a new refrigerator. He closed the restaurant about 9:15 a. m. July 4, took all the money out of the cash register and put what coins he could in a bag and the rest in his pocket. He didn't know how much money was in the register when he emptied it but there was about $60 or $70 in bills and change consisting of nickels, dimes, quarters and pennies.

After he and Bowen had closed the restaurant they went looking in closed restaurants for used tables and chairs for his restaurant. Defendant recalled walking down the north side of Locust, stopping in front of O'Dea, but didn't notice anything unusual about the parking meters. His version of going to the parked car on

12th Street and later stopping on 9th and Locust before going to the T & T Buffet did not differ from Boggs' testimony.

Defendant stated he went to the restroom in the back of the tavern but it was occupied, denied putting anything on the floor or attempting to hide anything in the area or of having ever seen the meter key received in evidence.

Defendant testified he told the officers at the tavern that the money he had on his person came from the cash register in the restaurant. In his account of "the money-mixing incident" during the booking procedure defendant denied the officer told him not to mix the money from the bag with that removed from his pockets. He did so because he thought the officers wanted to count all the money. He did admit one of the officers became "mad" when this happened.

The foregoing narrative of defendant's testimony constitutes his explanation of his presence at the O'Dea and 9th and Locust meters and his possession of coins similar to those used in operating parking meters in those areas.

■ There was substantial evidence reasonably tending to support the charge of larceny from parking meter. It does more than generate suspicion, speculation or conjecture and cannot be said to be clearly against the weight of the evidence. It is sufficient to raise a fair inference of guilt and the jury's finding of guilt is binding on us. The authorities cited, supra, support this holding.

Defendant's contention urged under the assigned errors considered in this division cannot be sustained.

II. Insofar as his contention asserted in another assigned error, failure to grant a new trial, is based on the court's failure to direct a verdict at the close of the State's evidence and the close of all evidence, it is without merit.

Defendant does not assign as error any other grounds urged in this motion and none are presented for review here.

III. In his remaining assignment defendant challenges the court's instruction bearing on his possession of recently stolen property.

Defendant's objections to this instruction made at trial before the instructions were read to the jury are detailed in the record. He urged the same grounds in motion for new trial by reference and also in support of this assignment. He maintains the instruction should have dealt with "explained" rather than "unexplained" possession of recently stolen property in view of defendant's testimony as to how he came in possession of the coins involved and relies on State v. Cox, 240 Iowa 248, 253, 34 N.W. 2d 616, 619. That case is factually distinguishable.

The identical instruction complained of here was considered by us in State v. Horrell, supra, 260 Iowa at 955, 151 N.W.2d at 532–533. Although the attack there was based on a different contention a unanimous court found no reversible error in the instruction.

■ It is undisputed defendant possessed certain coins when arrested. The instruction given told the jury to determine whether explanation of the possession consistent with defendant's innocence could be found from all facts and circumstances in evidence. The truthfulness of defendant's explanation of possession was for the jury. State v. Mabbitt, 257 Iowa 1063, 1069, 135 N.W.2d 525, 529; State v. Horrell, supra, 260 Iowa at 956–957, 151 N.W.2d at 534, and citations in these opinions.

It does not indicate no explanation was made sufficient to rebut the inference of guilt arising from unexplained possession of recently stolen property as pointed out by the court in State v. Cox, supra, in deciding the instruction in that case consti-

tuted reversible error. The complaint urged against the instruction here is without merit.

The case is

Affirmed.

All Justices concur.