## BISHOP v. ATLANTIC SMOKELESS COAL CO.

### Civ. A. No. 262.

United States District Court
S. D. West Virginia.

Dec. 29, 1949.

28

Strother & Christie (Samuel A. Christie,) Welch, West Virginia, for plaintiff.

Kingdon & Kingdon (Fred T. Kingdon,) Mullens, West Virginia, for defendant.

MOORE, Chief Judge.

The question involved here arose on a motion by Cecil W. Wilson, Sheriff of McDowell County, West Virginia, to quash garnishee process served upon him in this action.

Oakey Bishop brought suit in this court against the Atlantic Smokeless Coal Company to recover for alleged unpaid wages and overtime and for liquidated damages, under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Plaintiff obtained an attachment order and on October 13, 1949, caused garnishee pro-

cess to be served on Sheriff Wilson in an effort to attach property of the defendant allegedly in the possession of the sheriff.

Prior to service of the garnishee process Lewis-Hubbard Corporation had secured a state court judgment against defendant and on September 30, 1949, had caused an execution to be issued thereon and placed in the sheriff's hands on that date. Shortly thereafter the sheriff levied the execution upon a stock of goods (valued at about $700) on the first floor of the company store of defendant at Asco, West Virginia. The mines were not in operation at that time and the store was closed; so to effect his levy, the sheriff merely took possession of the key to the store. Defendant later agreed to pay the judgment in instalments, and Lewis-Hubbard Corporation requested the sheriff to suspend the execution and to "abate" it upon payment of execution costs by defendant. These costs were paid, and on October 24, 1949 (which was subsequent to the service of garnishee process on the sheriff in this action), the sheriff returned the execution satisfied to the extent of the instalment payment already made ($100.00) and as to costs, but otherwise not satisfied, and gave the key back to defendant.

In support of his motion, the movant urges that the property came into his hands by virtue of the execution and levy and was therefore held in custodia legis, and, as a matter of public policy, was not subject to attachment or garnishment. The movant also sets forth the additional ground that a sheriff as a public officer is immune from garnishment, as a matter of public policy. Citing Leiter v. American-Larrance Fire Engine Co., 86 W.Va. 599, 104 S.E. 56.

In reply plaintiff argues that, upon the release of the execution, all that remained for the sheriff to do was to return the property to defendant, and that being a purely ministerial function, the property ceased to be in custodia legis, and became subject to garnishment and attachment. Plaintiff relies principally upon Boylan v. Hines, 62 W.Va. 486, 59 S.E. 503, 12 L.R.A.,N.S., 757, 125 Am.St.Rep. 983, wherein the court held that garnishee process could reach surplus money in the hands of a special commissioner, when the court had entered an order

directing payment of the surplus to the debtor. Plaintiff also argues that the sheriff is a court officer just as the special commissioner in the Boylan case, rather than a public official as in the Leiter case, wherein a city treasurer was involved, and further, that the Boylan case was reexamined and approved in Campbell v. Hutchinson Lumber Co., 106 W.Va. 142, 145 S.E. 160. Plaintiff admits that prior to the release of the execution the property was *in custodia legis* and immune from process, but claims that it became subject to garnishment immediately upon release of the execution and while still in the sheriff's possession.

It seems to me, however, that the crux of the question here involved is not primarily whether the property was *in custodia legis* after release of the execution, or whether the sheriff is immune from garnishment by virtue of being a public official. There must first be a determination whether, upon release of the execution, the sheriff then had in his actual possession *any* property of the defendant debtor. The West Virginia Code, 38-7-15, requires that in order to effect a garnishment the garnishee must be indebted or liable to or have in his possession property of the defendant. Obviously the sheriff was not indebted or liable to the execution debtor in any amount; so, if he had no property in his possession belonging to the execution debtor, he could not properly be garnisheed.

Possession of the type contemplated by the statute could have been secured only by virtue of the execution and levy thereunder, and, if the garnishment were to be effective, must have continued after the release of the execution by the Lewis-Hubbard Corporation, since prior to the release the property was *in custodia legis* and not subject to garnishment. The question therefore is, whether release of the execution left possession in the sheriff. The answer is, no. Chapter 38, Article 7, Section 42, of the Code of West Virginia permits the levy of more than one attachment or garnishment on the same property, giving priority to the one first served; and 38-4-14 permits multiple executions, with priority to the one first delivered to the officer. In each case, upon satisfaction or release of the first levy, the

next senior lien becomes paramount. Superficially it might appear that we are led by these provisions of the Code to the conclusion that, upon release of the Lewis-Hubbard execution, the garnishment served by plaintiff on the sheriff attached to the property of the execution debtor, there being no mention of any other outstanding garnishment or execution. But for this garnishment (or any garnishment) to become a lien on property of the execution debtor there must be an interval of time during which it was in the sheriff's hands, and yet not *in custodia legis*. If the sheriff had actually had the goods in his possession at any time subsequent to the release (laying aside for the moment the question of official immunity), the garnishment would have become effective; and if its lien stood next to that of the original execution, plaintiff could claim priority. However, I am of opinion that whatever possession the sheriff had passed automatically and by operation of law from him back to defendant upon release of the Lewis-Hubbard execution. When an officer levies upon a stock of goods, he does not actually remove them from the storeroom, since to take personal possession of all goods levied on would, as a practical matter, be impossible. What is usually done is to make a paper levy, under which the officer acquires constructive possession. This course was followed in the present case, and what the sheriff acquired was constructive possession of defendant's stock of goods. This possession was acquired by virtue of the execution, solely for the purpose of making sale under the execution, and upon release of the execution possession was at an end. No act by the sheriff was necessary in order to effect the return. The goods had, throughout the time of the levy, remained on defendant's premises and actual possession had remained with the defendant. Since up to the time of the release the goods were *in custodia legis*, and since the release terminated the constructive possession of the sheriff, I hold that there were no goods in the possession of the sheriff which would make him a proper subject for garnishee process, and his motion is accordingly sustained on that ground.

The motion must also be sustained on the ground, alluded to earlier in this opinion, that a sheriff as a public official is immune from attachment and garnishment as a matter of public policy. Plaintiff relies upon Boylan v. Hines, supra, and Campbell v. Hutchinson Lumber Co., supra, to negate any immunity the sheriff might claim from his official position. Neither of these cases is in point. In both the Boylan case and the Campbell case the garnishee was a special commissioner appointed by the court. In each instance the court held that where an order has been entered directing payment of surplus funds to the debtor, such funds in the hands of a special commissioner can be reached by garnishment. The nature of the office held by these garnishees distinguishes the Boylan and Campbell cases from the present case, and renders the holdings of those cases inapplicable to our situation. A special commissioner is appointed by the court for a specific purpose (usually to conduct a judicial sale) and after the property is sold, the creditor satisfied, and an order entered directing payment of the surplus to the debtor, the official status of the commissioner is terminated. All that remains is the purely ministerial act of turning over the surplus to the debtor. Failure to do so renders the commissioner personally liable. He is not a public official of the type with continuing duties still existing after termination of the work for which he was appointed. Immunity from garnishment is grounded upon a public policy against interference with official duties by compulsory participation in private litigation. When a special commissioner has only to deliver the surplus to the debtor, he has no further official duties to perform. Therefore, he is subject to garnishment based on the well established maxim that when the reason for the rule ceases, the rule ceases.

A sheriff is an officer of a different type. He is an officer of the court, but he has other duties separate and apart from his functions as a court officer (such as collection of taxes and maintenance of public order) which render him what is commonly known as a public official. It is true that a sheriff may also be directed to conduct a judicial sale, and upon completion be ordered to return the surplus to the debtor; and so far as that particular assignment is concerned, the sheriff has no further official duties to perform. But there are other continuing official duties peculiar to his office which he must be free to perform with a minimum of interference. Immunity from garnishment of public officials is a well settled rule in West Virginia. See Leiter v. American La-France Fire Engine Co., supra.

I am of opinion that a sheriff is a public official of the type contemplated by the rule and is clothed with such immunity.

The motion to quash garnishee process is therefore sustained.

An order may be presented for entry in accordance with this opinion.