**STATE of Iowa, Appellee,**

v.

**Jackson GRAHAM, Appellant.**

No. 55106.

Supreme Court of Iowa.

Jan. 17, 1973.

Oscar O. Over, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Richard Winders, C. Joseph Coleman, Jr., Larry Seuferer, Asst. Attys. Gen., and Lyle A. Rodenburg, County Atty., Council Bluffs, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

Defendant appeals from judgment on jury verdict finding him guilty of interference with administration of justice. We affirm.

This case stems from a divorce action, Shirley Claycomb vs. Gerald Claycomb, Pottawattamie District Court. October 29, 1970, a supplemental decree was entered therein by which custody of two minor children was transferred from plaintiff (Shirley) to defendant (Gerald). In relevant part that decree provides:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Sheriff of this County forthwith, take custody of Chris William Claycomb together with his personal belongings and the remainder of the personal belongings of the older son, Larry Boyd Claycomb, now in possession of the plaintiff and deliver him and said personal belongings to the defendant Gerald Claycomb at the Sheriff's office in Council Bluffs, Iowa."

Shirley did not voluntarily surrender the son Chris to his father. As a result the

latter engaged in a personal close watch of this defendant. Gerald saw a boy wearing his son's jacket riding with defendant in a blue Toronado automobile. Gerald followed, called the Pottawattamie County sheriff's office and reported his observations, then proceeded to defendant's apartment in Council Bluffs. He there again saw the Toronado. Some sheriff's deputies arrived, went to defendant's apartment and knocked on the door. When defendant responded the officers identified themselves, advised defendant regarding the aforesaid decree and told him they had reason to believe Chris was in the apartment. Defendant denied Chris was there or that he knew where the boy could be found. When defendant refused admittance to the officers he was told they would secure a search warrant.

Some policemen and an assistant county attorney appeared on the scene at about that time. Subsequently, defendant alone left the premises. The residence was kept under surveillance and a search warrant obtained. Armed with the warrant some officers again went to the apartment, were refused admittance by defendant's daughter, forced an entry and there found Chris in a closet covered with clothes and boxes.

The information resultantly filed charged defendant had interfered with the administration of justice in violation of The Code 1971, Section 723.1.

Errors urged on appeal are, trial court erred in (1) holding the evidence, as a matter of law, supported the offense charged, (2) refusing defendant's requested instructions 5, 6, 7, 9, 13, and 14, and in submitting instruction 7 as given, (3) overruling defendant's motion to dismiss made at close of the State's evidence.

I. For the most part defendant argues he could not, as a matter of law, be guilty of a crime as defined by § 723.1, i. e., if he committed any offense it was such only under Code § 742.1. In sum total defend-

ant's main contention is that he was improperly accused. We are not so persuaded.

Section 723.1 provides:

"If any person attempt in any manner to improperly influence, intimidate, impede, or obstruct any petit juror, grand juror, or other officer in any civil or criminal action or proceeding, or any one drawn, summoned, appointed, or sworn as such juror or officer, or any arbitrator or referee, or any witness or any officer in, or of, any court or tribunal in relation to any cause or matter or proceeding pending in, or that may be brought before, such court or tribunal, for which such juror or other officer has been drawn, appointed or in which said witness has been, or may be, called to testify, or in regard to which such officer is, or may be, required to act in his official capacity, or, if any person shall intentionally, or by threat or force, or by any threatening letter or threatening communication, or by any public speech or in any other manner improperly influence, obstruct, or impede, or endeavor or attempt to improperly influence, obstruct, or impede the due administration of justice or the actions or conduct of any such jurors, witnesses, arbitrator, referee, or other officer, he shall be punished by a fine not exceeding one thousand dollars or by imprisonment in the penitentiary not more than one year, or by both such fine and imprisonment."

Next, § 742.1 states:

"If any person knowingly and willfully resist or oppose any officer of this state, or any person authorized by law, in serving or attempting to execute any legal writ, rule, order, or process whatsoever, or shall knowingly and willfully resist any such officer in the discharge of his duties without such writ, rule, order, or process, he shall be imprisoned in the county jail not exceeding one year, or be

"fined not exceeding one thousand nor less than fifty dollars, or be both fined and imprisoned, at the discretion of the court."

Defendant instantly questions neither the constitutionality of § 723.1, nor the authority of sheriff's deputies.

■ Where, as in this case, an officer such as a sheriff or his deputy is, in his official capacity, engaged in the performance of his duties required of him by a court order, judgment or decree, civil or criminal, he is unquestionably a part of the judicial machinery and as such acting in an administrative capacity. See Tice v. Tice, 208 Iowa 145, 149–150, 224 N.W. 571 (1929) ; Massey v. City of Macon, 97 Ga. App. 790, 104 S.E.2d 518, 521 (1958).

■ Furthermore a sheriff and his deputies qualify as peace officers and were, in this case, clearly acting pursuant to a court order. See The Code, § 748.3; Bishop v. Atlantic Smokeless Coal Co., 88 F.Supp. 27, 30 (S.D.W.Va.1949) ; Levine v. Levine, 44 R.I. 61, 115 A. 243 (1921).

■ Distinguishably, when any such official acts or attempts to act by virtue of his general authority he is performing an executive function. Thus any person willfully resisting or opposing him in the carrying out of such functions would be violating Code § 742.1. See Tice v. Tice, *supra*; State v. Perry, 109 Iowa 353, 80 N. W. 401 (1899) ; cf. State v. Medina, 165 N.W.2d 777, 780–781 (Iowa 1969) ; State v. McGowan, 243 N.C. 431, 90 S.E.2d 703, 705 (1956). See generally City of Seattle v. Gordon, 54 Wash.2d 516, 342 P.2d 604, 606–607 (1959) ; 47 Am.Jur., Sheriffs, Police, and Constables, § 26; 80 C.J.S. Sheriffs and Constables § 35.

■ As stated above the sheriff's deputies were instantly engaged in effectuating a judicial decree. Thus any willful, improper obstruction of such administration

of justice would constitute a violation of Code § 723.1, quoted above.

Defendant's first assignment is without merit.

■ II. By the same token it is evident trial court did not err in refusing defendant's requested instructions 5, 6, 7 and 14, all of which would have served in substance to improperly, for reasons stated above, invoke the provisions of Code § 742.1.

■ III. Neither is there substance in the claimed error predicated on trial court's refusal of defense requested instruction 9.

Defendant thereby sought to have the jury advised "that in order for Mr. Graham to have endeavored or attempted to 'improperly' impede, he must have knowingly intended to commit the improper act knowing the same at that time to be improper".

Argument in support of this assignment is that by instruction 6 as given the court used but did not define the word "improperly".

A review of the record discloses, however, no such contention has ever been previously voiced by defendant (1) in the form of objection to instructions given, (2) by those requested, or (3) on motion for a new trial. Stated otherwise, error here urged, if any, was not preserved for appellate review. See State v. Cartee, 202 N. W.2d 93, 97 (Iowa 1972).

■ In any event "improperly", as instantly employed, is a word of such ordinary usage and so generally understood as to permit but not require that it be instructionally defined. See State v. Hartung, 239 Iowa 414, 428–429, 30 N.W.2d 491 (1948) ; Webster's Third New International Dictionary, Unabridged, at 1137; cf. State v. Fiedler, 260 Iowa 1198, 1204, 152 N.W.2d 236 (1967).

Trial court did fully instruct the jury as to the meaning of the words "obstruct" and "impede". The matter of scienter was also adequately covered by instructions 6 and 7 whereby the jury was told, in relevant part, it was the State's burden to prove, beyond a reasonable doubt, defendant acted "intentionally" and "knew" the officers were executing or attempting to execute a court order. See State v. Orozco, 202 N.W.2d 344 (Iowa, opinion filed November 15, 1972); State v. Dunn, 199 N.W.2d 104, 107–108 (Iowa 1972).

■ IV. On appeal it is also urged trial court erred in refusing to give defendant's requested instruction 13 to the effect defendant could not be found guilty of any obstructive actions on the part of his daughter. This contention is foundationed upon a false premise and devoid of substance.

Defendant's initial actions and conduct constituted the offense for which he was charged. Ensuing events simply served to disclose he inceptionally obstructed or endeavored to impede the deputy sheriffs in the performance of their duties pursuant to a judicial decree. In other words, subsequent occurrences afforded facts upon which the jury could reasonably find (1) Chris Claycomb was knowingly concealed by defendant in his apartment when (2) he denied knowledge as to where the boy could be found, and (3) admitted knowledge of the court decree under which the deputies were then acting.

■ V. Another issue here raised by defendant, as aforesaid, is that the court erred in repeatedly sustaining prosecution objections to questions·asked of defense called witnesses concerning out of court statements allegedly made by Shirley Claycomb to the effect she intended to comply with the aforesaid decree.

We find no basis on which to hold trial court erroneously sustained the State's "immaterial and irrelevant" objections to the proffered questions.

As stated in Jettre v. Healy, 245 Iowa 294, 299–300, 60 N.W.2d 541, 544 (1953):

"[S]pecific objections cannot be urged under the general objection that evidence is 'incompetent, irrelevant and immaterial.' The objection must in some way call the court's attention to the ground of objection. * * *

"It is also true that while an objection must be specific when overruled, there is a difference when the objection complained of is sustained. In the latter case, if the question is objectionable on any ground, the sustaining of it is not error, even though not specific."

See State v. Armstrong, 203 N.W.2d 269 (Iowa 1972). See also Rules 401–403, Rules of Evidence for the United States Courts and Magistrates, adopted November 20, 1972.

■ Finally, on this subject, a determination as to relevancy and materiality of evidence rests largely in the trial court's sound discretion. See State v. Clark, 187 N.W.2d 717, 720 (Iowa 1971). That discretion was not here abused.

In light of the foregoing· it is not essential the hearsay issue inferentially raised by defendant be here resolved.

■ VI. Both explanatory and dispositive of defendant's final asserted error is this statement in State v. Smith, 195 N.W.2d 673, 675 (Iowa 1972):

"No error can be predicated on the failure to grant the motion for directed verdict made at the close of the State's evidence. The court may sustain such a motion but is not required to do so. (Authorities cited)."

Further discussion will serve no useful purpose.

Affirmed.