STATE OF IOWA, Appellee, v. FRANK SCHMIDT, Appellant.

No. 47032.

(Reported in 30 N. W. 2d 473)

JANUARY 13, 1948.

REHEARING DENIED MARCH 12, 1948.

William P. Welch and William H. Welch, both of Logan, and Robert K. Brannon, of Denison, for appellant.

Robert L. Larson, Attorney General, Charles H. Scholz, Assistant Attorney General, and L. V. Gilchrist, County Attorney, for appellee.

HAYS, J.—On October 10, 1946, the grand jury of Crawford County, Iowa, returned an indictment accusing Frank Schmidt of the crime of larceny in that the said Schmidt, on or about September 17, 1946, stole oats from Ray Bendixon in the amount of one hundred to one hundred fifty bushels,

worth more than twenty dollars. Upon a plea of not guilty the cause was tried to a jury, which returned a verdict of guilty, finding the value of the oats to be in excess of twenty dollars. From a judgment entered thereon, defendant, Frank Schmidt, appeals.

Appellant urges eight propositions as a basis for a reversal. They are all more or less interwoven with two being primarily urged: (1) The refusal of the trial court to direct a verdict at the close of the State's evidence and of all the evidence. (2) Exceptions to certain instruction given by the court.

■ I. Should the trial court have directed a verdict for appellant? In the recent case of State v. Traas, 230 Iowa 826, 830, 831, 298 N. W. 862, 865, in commenting upon this question, we said:

"This court may set aside a judgment on a verdict of guilty when the verdict is very clearly against the weight of the evidence, or is so utterly wanting that it cannot be sustained. [Citing cases.] The district court may direct a verdict for the accused under the same circumstances. But when either court so rules, it ordinarily accepts the evidence as true, but holds that notwithstanding the evidence is taken at its face value, it is insufficient to establish the guilt of the defendant."

In considering this first assigned error it is necessary to consider the evidence in the light of above pronouncement.

■ ■ The crime charged is larceny. Larceny is defined as "the wrongful taking and carrying away by a person of the personal property of another from any place, with a felonious intent to convert it to the taker's own use without the consent of the owner." State v. Banoch, 193 Iowa 851, 853, 186 N. W. 436, 437. The felonious taking from one entitled to the possession, although not the owner, may constitute larceny. State v. Stanley, 48 Iowa 221; State v. Rivers, 60 Iowa 381, 13 N. W. 73, 14 N. W. 738. The very essence of the crime of larceny is the intent with which the taking is done. Appellant claims the State has utterly failed in proof of a felonious intent.

There is not much dispute in the facts. Appellant and

Bendixon stood in the relationship of landlord and tenant. By virtue of a written lease, appellant, as landlord, was entitled to two fifths of all oats raised by Bendixon. On September 17, 1946, appellant, having received at a prior date one hundred eighty bushels of oats, went to the Bendixon farm and took from the granary one hundred bushels of oats, more or less. In January 1947 and prior to the trial under the indictment in question, appellant received from Bendixon in a rent settlement some two hundred bushels of oats in addition to the ones previously received and taken.

The written lease provides that the lessee is to deliver the landlord's share to any place at any time, as directed by the landlord, within a five-mile area. It also provides that should the lessee refuse or neglect to perform the provisions of the lease the landlord may enter the premises and perform the same. Under the record it is clear that on at least two occasions prior to September 17th, the landlord requested Bendixon to haul oats to his home farm, a distance of a mile or so, and that these requests were not complied with.

The record further discloses that after the threshing and delivery to the landlord of one hundred eighty bushels of oats, a dispute arose between the parties. It was claimed by the landlord that the oats he received were of poorer quality than those kept by the tenant. Appellant claims Bendixon told him he could take oats from any of the bins where they were stored. Bendixon admits this, but adds that this consent was conditioned upon Bendixon's being present when appellant took the oats. He was not present at the time.

It is claimed by the State that appellant took the oats from Bendixon's bin. There is evidence that the oats were stored in various bins. Just after the threshing commenced appellant was at the granary and helped with the sweeping and cleaning of one of the bins. It is in this bin that Bendixon claims he placed appellant's oats. Nowhere in the record does it appear that appellant was advised of this. It does appear without dispute that appellant was not about the farm at the time of the alleged division and storage by Bendixon. It also appears

that on September 17th when the oats were taken, appellant had not been advised of the total yield.

Taking the evidence at its face value and assuming that under the lease Bendixon was the owner of the oats taken, the only evidence of a felonious intent upon the part of appellant is the bare fact that he took them. As against this fact is the provision in the lease that Bendixon should deliver appellant's share, as directed; that two requests to deliver had been ignored; that the lease by its terms provided that upon failure of the tenant to carry out the provisions of the lease the landlord might do so; the undisputed fact that appellant was entitled to some three hundred bushels of oats from the Bendixon farm at the time he took the oats in question; and the admitted consent by Bendixon that appellant might take oats from any bin, provided he was present when they were taken.

In the annotation in 13 A. L. R. 142, it is stated:

"The general rule laid down by the authorities is that one who openly and avowedly takes the property of another without the latter's consent, in settlement of * * * a debt bona fide claimed to be due him by the owner of the property, is * * * at least not guilty of larceny * * *. The basis of the decisions is the lack of intent to defraud, which is the essence of the crime. It is otherwise, however, where there is lack of good faith in asserting a debt, or where there is evidence tending to show a felonious intent in the taking of the property."

52 C. J. S., Larceny, section 26a, states the rule to be:

"Taking property of another under a bona fide claim of title or right to possession is not larceny, although the claim is based on a misconception of the law."

In 32 Am. Jur., Larceny, section 41, we find the statement:

"An intent to steal property and a bona fide claim of right to take it are incompatible. One who takes property in good faith, under fair color of claim or title, honestly believing that he is its owner and has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is

mistaken in such belief, since in such case the felonious intent is lacking."

See, also, to the same effect, State v. Rivers, 60 Iowa 381, 13 N. W. 73, 14 N. W. 738; State v. Barrackmore, 47 Iowa 684; State v. Bond, 8 (Clarke) Iowa 540; State v. Hollyway, 41 Iowa 200, 202, 20 Am. Rep. 586; State v. Wasson, 126 Iowa 320, 322, 101 N. W. 1125.

■■ Where the criminality of an act depends upon the intent with which it is committed, it is not necessary that the intent be established by distinct and positive proof, but is sufficient if it can reasonably be inferred from the facts. State v. Maxwell, 42 Iowa 208. In State v. Wilbourn, 219 Iowa 120, 124, 257 N. W. 571, 574, we say:

"In the determination of a motion for a directed verdict, favorable consideration must be given to the evidence offered by the State to support the charges made in the indictment. If there is a conflict in the evidence, it necessarily becomes a question for the jury."

■ Applying the foregoing rules to the case at bar, we are convinced that appellant's motion for a directed verdict should have been sustained. There is no disputed fact in the evidence upon which felonious intent might be found. It is without dispute that appellant was entitled to part of the oats in the Bendixon granary. He took less in quantity and value than he was entitled to receive. He acted in broad daylight, without attempt to conceal. He had been told he could have oats from any of the bins. The only dispute in the record is whether or not this consent was coupled with a condition that they be taken when Bendixon was present, and this condition under the record is far from clear. But assuming such condition to exist, still this fact alone is not sufficient in view of the entire situation to warrant submission to the jury of the question of a felonious intent. Such a finding is not substantiated by the evidence.

Finding as we do that there should have been a directed verdict for appellant, we need not consider the other assigned errors.

The case is reversed with instructions to the lower court

to enter an order setting aside the verdict of guilty and dismissing the indictment.—Reversed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, MANTZ, and SMITH, JJ., concur.