STATE OF IOWA, appellee, v. HENRY CARL FONZA, appellant.

No. 50722.

(Reported in 118 N.W.2d 548)

DECEMBER 11, 1962.

Jens Grothe, of Des Moines, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, and Harry Perkins, Polk County Attorney, all of Des Moines, for appellee.

SNELL, J.—Defendant, Henry Carl Fonza, was indicted, tried and found guilty of robbery. From judgment of imprisonment he has appealed. The first problem is factual. Was there evidence to support a verdict of guilty?

Factually the prosecution's case suffers from anemia. There is plenty of suspicion, conjecture and rationalizing but little substance. We suspect that this condition may have been brought about by the failure of a contemplated witness for the State

to testify. The clerk's transcript which is before us, in addition to the printed record, shows that the State made application for the return of a witness from the State Training School so as to be available as a material witness on behalf of the State. An order as requested was made. The record does not show that the witness ever testified.

Much of the evidence appears without material dispute.

About 1 or 1:30 a.m. on January 14, 1962, Billy J. Williams, the prosecuting witness, took his girl friend home from a dance. As he departed he removed his bankbook from his hip pocket and left it with her for safekeeping. He "didn't want to take a chance of losing it." He says that at that time his billfold containing about seven dollars was in his pocket. He thinks, but is not sure, that from force of habit he buttoned his pocket.

After leaving his girl friend, Williams drove around until about 2:30 a.m. looking for his girl's brother-in-law's car. Just why he spent an hour or an hour and a half driving around at that time of night for such a purpose does not appear. It is probably not important. He saw what he thought was the car he was looking for. He parked his car, got out and went around the corner. There he met "four guys" coming up the street. One of them hit him and Williams fell. He says that then all four started kicking and hitting him. After a couple of minutes he heard one of them say "Let's get out of here." The assailants left. Williams got up, went into the Roxie Hotel and asked for something with which to wipe blood off his face. Someone said "what did they do, rob you?" He reached in his pocket. His billfold was gone. With someone from the hotel he went outside, saw a police patrol car and reported the incident. The area was searched but the billfold was not found. The police broadcast a call for the apprehension of the suspects. Within a few minutes four colored young men, in separate groups of two each, were taken into custody. One of the youths, other than defendant, was identified by Williams as the initial assailant. Defendant was identified as one of the group of assailants.

Williams was taken to Mercy Hospital for repairs. This was some distance from the place of the assault. He spent the night there. The next morning at the hospital Williams' billfold

without the money was returned to him by an unidentified white woman who said some woman coming to church at the hospital had found it and turned it in.

I. The weakness in the State's case appears in Williams' testimony. He is not sure of anything except that he was attacked, that he later missed his billfold and that defendant was present during the attack. The evidence would support a charge of assault and battery but taken as a whole is insufficient to establish larceny, an essential element in robbery. The evidence about the return of the billfold, if it proves anything, indicates that it was found too far from the place of assault to have been discarded by defendant or his companions. Concerning his billfold and the assault, Williams testified (emphasis supplied), "*I believe* they reached into my pocket and took my billfold but *I don't remember them taking it*. They did not make any demand on me of any kind or character. I don't recall them reaching into my pocket and extracting from my person a billfold, *but I believe they did*."

Speaking of the return of the billfold he said, "She had found it, *I guess*, on the way to church and turned it in there. *I suppose* it is possible that I lost my billfold prior to the time of this incident at Fourth and Court, but not too probable. These men made no demand on me for any money, billfold or property of any kind. * * * I don't recall them taking it, *but I believe they did*. * * * *I couldn't feel anyone reach in my pocket,* there was too much going on. I keep my billfold in my left hip pocket, and *I think* it was buttoned *but wouldn't say for sure*. *I usually button it* but *sometimes I don't get it buttoned*."

When defendant was searched for weapons by police a few minutes after the assault and again thoroughly searched at the police station, no money and nothing to connect him with a larceny or robbery was found on his person. The only one of the suspects who had any money was Holmes, the first assailant. In his billfold (not Williams') were two five dollar bills and three one dollar bills.

At a later interrogation by police at the county jail defendant was informed that he had been charged with robbery. He was shown a statement and asked if he knew from the statement

that he was accused of being an accomplice to the robbery. He said, "Well, I was with the guys, but I won't go for robbery."

Defendant, 22 years old, was a resident of Illinois. He had driven to Des Moines about a week before to visit an aunt and uncle. On the evening in question, with a cousin, he went to a dance at a place called the "Brotherhood." After the dance he was invited by someone to a house party. After the party he was asked to take a number of boys home. He did so. Defendant says he was intoxicated and sick from drinking wine and asked some of the others to drive. Finally there were only the four, who were later arrested, in the car. Defendant testified that the driver stopped the car. They all got out. He said he saw a man coming. "Holmes ran head on into this man and hit this man. Immediately after he hit this man, I moved out. I took off in the same direction I was going."

It is undisputed that defendant was present or at least saw the assault. The testimony of Williams would be sufficient to generate a jury question that defendant may have joined in the assault. There is no evidence whatsoever that defendant knew of any plan for assault. There is no evidence that defendant knew of any planned robbery or larceny, participated in any larceny, if there was a larceny, or until he was in jail knew that a larceny had been committed or claimed.

II. If any person, with force or violence, or by putting in fear, steal and take from the person of another any property that is the subject of larceny, he is guilty of robbery. Section 711.1, Code of Iowa.

Larceny means to steal, take and carry away property of another. Section 709.1, Code of Iowa. The crime of robbery includes larceny. State v. Taylor, 140 Iowa 470, 474, 118 N.W. 747; State v. Graff, 66 Iowa 482, 24 N.W. 6; State v. Kobylasz, 242 Iowa 1161, 1165, 47 N.W.2d 167.

"In robbery, as in larceny, it is essential that the taking of the goods be animo furandi." State v. Hollyway, 41 Iowa 200, 202, 20 Am. Rep. 586. "The very essence of the crime of larceny is the intent with which the taking is done." State v. Schmidt, 239 Iowa 440, 442, 30 N.W.2d 473, 474.

The distinction between a principal and an accessory

before the fact has been abrogated by statute. Section 688.1, Code of Iowa. However for conviction there must be evidence that the accused committed the act constituting the offense or did "aid and abet its commission." Mere presence is not enough. To make the defendant guilty, he must have aided or abetted, or the act must have been the result of a confederacy. State v. Farr, 33 Iowa 553, 562.

■ Robbery is an offense involving violence or the threat of violence. Direct proof of intent is not ordinarily involved. However, where the case turns on whether or not there was a larceny there must be proof of a taking by someone and participation or intent of the accused. State v. Schmidt, supra.

■ In the case before us there is proof of assault and battery. There is proof that an assailant other than defendant precipitated the attack. There is testimony, disputed by defendant, that defendant joined in the fray. There is the belief of the victim, a conclusion of fact, that because his billfold was gone one of his assailants must have taken it. Assuming such a rationalization to be reasonable there is nothing with which to point the finger of guilt at defendant.

Immediately after the assault the defendant had no money on his person. The initial assailant had thirteen dollars.

The evidence of larceny by anyone is thin. There is no evidence whatsoever that defendant actually took the victim's billfold or even knew that it had been taken until he was so advised while in jail. There is no evidence of any plan, confederacy or intent. The mere fact that defendant was there in the beginning and that at sometime during the affray the victim's billfold may have disappeared will not support a conviction for robbery.

The trial court instructed the jury that before the defendant could be found guilty the State must prove beyond a reasonable doubt (among other things) "that the defendant * * * either by himself or by aiding and abetting another or others, did take, steal, and carry away money of Billy J. Williams." The instruction was correct but the proof was lacking.

It is not for us to sit as jurors nor pass upon the weight and credit of the testimony. It is not for us to substitute our

factual conclusion for that of the jury if there is evidence to support the several elements constituting the offense charged. It is our duty to interfere where there is no evidence or only suspicion and conjecture.

Such is the situation here. The case is too weak for survival. Defendant's motion for directed verdict or for judgment notwithstanding the verdict should have been sustained.

III. Defendant argues in the alternative that there was error in failing to submit the included offense of assault and battery. Because of our conclusion expressed, supra, the proposition need not be discussed.

The case is reversed and remanded for the entry of appropriate judgment.—Reversed.

All JUSTICES concur except THOMPSON, J., and GARFIELD, C. J., who dissent.

THOMPSON, J. (dissenting)—I am unable to agree that there was insufficient evidence of larceny from the person in State v. Fonza, to support a jury submission. The evidence is this: Williams was assaulted by four men, of whom the defendant was one. He was somewhat severely beaten. Shortly before the assault his billfold was in his pocket; so far as he knew it was there at the time of the assault. After the assault it was gone.

It seems to me this justifies an inference that the purse was taken during the assault; in fact, there seems no other motive for the attack. The majority concede there was sufficient evidence to submit defendant's connection with the assault. So I reason there was also sufficient evidence to connect him with the taking of the billfold. The question was properly submitted to the jury.

GARFIELD, C. J., joins in this dissent.