STATE of Iowa, Appellee,

v.

Jerry CAMPBELL, Appellant.

No. 55475.

Supreme Court of Iowa.

Jan. 16, 1974.

**196**

Matt Walsh, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and Lyle A. Rodenburg, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

This appeal is the aftermath of an incredible chain of events which started as a traffic dispute between two belligerent motorists and terminated in serious criminal charges against one who was only an innocent bystander to that affray. We reverse because there was insufficient evidence to permit submission of the case to the jury on the offense with which the State elected to charge defendant—robbery with aggravation.

In relating the bizarre circumstances which brings this controversy before us, we give only that version of the evidence most favorable to the State, since we are considering the sufficiency of the evidence to sustain the charge. State v. Ampey, 210 N.W.2d 433, 434 (Iowa 1973); State v. Williams, 179 N.W.2d 756, 758 (Iowa 1970); State v. Garrett, 173 N.W.2d 87, 89 (Iowa 1969).

On June 16, 1971, defendant and four companions—Dennis Fitzgerald, Douglas Schultz, Sharon Schultz, and Bev Bonacci—had visited several taverns in and around Council Bluffs and Omaha. They were on their way home in Fitzgerald's Ford Econoline van when the incidents with which we are concerned occurred. On that same evening, Donald Hill, his ex-wife, Beverly Hill, and Douglas Irvin had also been drinking at several taverns. About 2:00 A.M. these three topped off the night with a six-pack of beer in the parking lot of a club which had closed for the night. They then decided to go to Irvin's house in Omaha for coffee. The three were members of a motorcycle club which is described in the record as a "family-type" motorcycle group. Hill and his former wife were riding on one motorcycle following Irvin as they crossed the bridge from Council Bluffs to Omaha. The ensuing events occurred in Iowa. Although there was considerable drinking, there is no claim any of the principals was intoxicated.

For some unexplained reason, Fitzgerald, who was driving the van, and Donald Hill, driving the second motorcycle, became embroiled in a senseless argument over the right-of-way to a particular lane of traffic. Neither would yield to the other. Fitzgerald rolled down his window from which vantage point he and Hill engaged in an exchange of vulgar and profane insults. Apparently by mutual consent, these two decided to settle their differences by physical combat. They stopped their vehicles, dismounted, and began a spirited fist fight at the side of the road. According to the evidence, both were proud of their fistic prowess. At this time, no one except Hill and Fitzgerald had become involved in the altercation.

The circumstances quickly became more complicated. Seeing the difficulty which had arisen, Irvin turned his motorcycle around and went back to the scene of the fight. He was an Omaha police officer, off duty and out of uniform. Simultaneously, defendant and Schultz got out of the van and walked toward the two fighters. Nothing was said, nothing was done by either of them. At this point, Irvin, who says his sole interest was to "make sure the fight was kept even"—a curiously forbearing attitude for even an off-duty policeman—ordered defendant and Schultz back into the van. He did not identify

himself as a policeman and had no apparent authority to make such a command. (We pass as unimportant here the question of Irvin's status while in Iowa.) In response to this direction, defendant said, "Who the hell are you to tell me to get back into the truck?" Irvin replied, "I'll show you who I am." At the same time he drew his service revolver from a holster at his waist.

It is admitted Irvin was not then identified as a policeman. By the joint efforts of Schultz and defendant, he was disarmed. Defendant ended up with Irvin's gun.

■ Up to this point, we believe the evidence clearly shows defendant had committed no crime. He did not participate in the fight on the bridge nor in the argument which preceded it. He got out of the van but made no move to intervene in the affair. When Irvin imperiously ordered him back into the van, defendant was justified in peacefully challenging that command. When Irvin pulled a gun, defendant was justified in attempting to disarm him. It must be remembered defendant was on a public road at about three o'clock in the morning. Violence had already erupted. Then a stranger—the companion of one who had at least partially precipitated that violence—pulled a gun to enforce an order he had no authority to give in the first place. Defendant was within his rights in disarming Irvin, assuming he used no more force than was necessary to accomplish this.

We come then to the point at which Irvin was disarmed and the original fight between Fitzgerald and Hill had in the meantime subsided. At this point, of course, the parties should have gone their separate ways and Irvin's gun should have been returned to him. But nothing about this case happened as it *should* have. Instead defendant, who by then knew Irvin was a policeman, struck him several times across the face with the gun, fracturing his jaw in two places.

In the meantime, a passing motorist had called the police and the sirens of the approaching police cars could be heard. Fitzgerald, Schultz and defendant got back into their van and sped away, taking Irvin's gun with them.

There is yet another extraordinary circumstance to this case. Approximately three months after the fight on the bridge, Dennis Fitzgerald met violent death by gunshot. Officer Irvin's gun was found in his van. Hearing of this, defendant voluntarily went to the Omaha Police Department to explain how the officer's gun came to be in the van. His reason for doing so remains vague. While there, he was seen and recognized by Officer Irvin. Defendant was immediately charged with the crime of robbery with aggravation in Pottawattamie County.

Defendant raises only two issues for our consideration on this appeal. First, he claims that he was entitled to an instruction on self-defense and, second, he says the evidence was insufficient to sustain the charge against him or to permit its submission to the jury.

He raised this second issue by what is designated a motion to dismiss after the conclusion of all the evidence. We treat this as though it were a motion to direct a verdict and discuss it accordingly.

■ In view of our decision on the evidentiary matter, it is unnecessary to resolve the self-defense issue except to mention the matter briefly as it bears on the issue of intent. We find no issue of self-defense under this evidence. Once Irvin had been disarmed, there was no longer any threat of harm to defendant. There was then no reason for him to strike Irvin, especially in the brutal manner he did, unless out of a spirit of retribution for his prior use of the pistol against defendant. Perhaps his reason is best explained by his remark—"Don't you ever pull a gun on me again"—as he struck Irvin across the face with the pistol. The trial court properly refused to instruct on that issue.

We agree with defendant, however, that there was no evidence to justify submission of the charge of robbery with aggravation or its included offenses to the jury.

The determining factor here is whether the taking of Irvin's gun could be held to be larcenous. We hold it could not.

■ All definitions of robbery include the element of felonious taking. This animus furandi must exist at the time of the taking. 67 Am.Jur.2d, Robbery, Sections 11 and 15 (1973); 77 C.J.S., Robbery § 22b (1952); State v. Youngbear, 203 N. W.2d 274, 279 (Iowa 1972) (there must be a "felonious intent of the taker to permanently convert the property to his own use at the time of the taking."); State v. Fonza, 254 Iowa 630, 634, 118 N.W.2d 548, 551 (1962) ("In robbery, as in larceny, it is essential that the taking of the goods be animo furandi."). See also Midgett v. State, 216 Md. 26, 42, 139 A.2d 209, 217 (1958).

Two cases quite similar to the present one support our conclusion. In an old English case (Rex v. Holiday, 5 C. and P. 524, 525, 172 Eng.Rep. 1082 (1833)) it was held a person who took a gun from a gamekeeper under the impression it was to be used against him could not be convicted of stealing the gun even though it was never returned. Jones v. Commonwealth, 172 Va. 615, 1 S.E.2d 300, 301, 302 (App.Ct. 1939), also involved the taking of a pistol from a policeman in an effort to aid a third party. The Virginia court held this would not sustain a charge of robbery.

The state argues this case should be controlled by the rationale of People v. Heller, 131 Ill.App.2d 799, 267 N.E.2d 685 (1971). We believe the factual circumstances distinguish the two. In Heller there was an admitted larceny of money and thereafter a gun taken at the same time was used to effect the culprit's escape.

We have no quarrel with that opinion but it has no application here because we hold there is no evidence to show a felonious taking. This same observation may be made as to other authorities relied on by the state. Although they announce correct principles of law, they do not help the state here. They deal only with what circumstances may be shown to bring a case within the terms of section 711.2, The Code, defining when a robbery becomes *aggravated* robbery. First—and this is where the state has failed—there must be a felonious taking of property from the person of another. Section 711.1, The Code.

Every fact shown in this record belies any claim a robbery was committed. The evidence shows beyond question defendant was not bent on robbery. The events which closed in upon him and which now threaten him with long-term imprisonment show conclusively from start to finish, an absence of plan, design, intent or purpose to rob Irvin. To turn this street fracas into an armed robbery conviction is entirely beyond any reasonable interpretation of the testimony.

■ We have already said defendant's seizure of Irvin's gun when it was apparently being used in an assault against him was justified. From this it almost necessarily follows that such taking was not a felonious one and that the animus furandi required by prior holdings is missing. Without proof of that element, defendant's motion for a directed verdict should have been sustained.

We do not minimize the seriousness of what happened. The conduct of defendant in striking Irvin with the pistol and inflicting serious personal injuries on him after all threat to his own safety had ended appears to have been inexcusable. A charge of assault, either simple or aggravated, would have been proper and would have presented a real question for jury determination. However, it just wasn't robbery.

Perhaps we can best close with this quotation from State v. Fonza, supra, 254 Iowa at page 635, 118 N.W.2d at page 552:

"It is not for us to sit as jurors nor pass upon the weight and credit of the testi-

mony. It is not for us to substitute our factual conclusion for that of the jury if there is evidence to support the several elements constituting the offense charged. It is our duty to interfere where there is no evidence or only suspicion and conjecture.

"Such is the situation here. The case is too weak for survival. Defendant's motion for directed verdict or for judgment notwithstanding the verdict should have been sustained."

The case against defendant, like that in State v. Fonza, is "too weak for survival." It must therefore be reversed and remanded with instructions that judgment for defendant be entered.

Reversed and remanded.