STATE of Iowa, Appellee,

v.

Ronald HOLMES, Appellant.

No. 62080.

Supreme Court of Iowa.

March 21, 1979.

Gordon M. Liles, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., Ann Fitzgibbons, Asst. Atty. Gen., and Michael P. Short, Keokuk, Lee County Atty., for appellee.

Considered by REYNOLDSON, C. J., and REES, McCORMICK, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

Defendant Ronald Holmes appeals his conviction and sentence for robbery in the second degree in violation of § 711.3, Supplement to the Code 1977. He claims trial court erred in instructing the jury and in overruling his motions to dismiss. We affirm.

The jury found defendant guilty of robbing the desk clerk at the Holiday Inn motel in Keokuk on January 20, 1978 while representing that he was in the immediate possession and control of a firearm.

Trial testimony indicated the robbery occurred as follows.

Holmes came in and said to the clerk "Give me your drawer" and "just give me the bills, the paper money, no coins. Don't say anything." During this time he held his hand in a jacket pocket in a manner which elevated the pocket away from his body and gave the appearance of a concealed gun pointed at the clerk. The clerk testified she believed there was a definite possibility she would be shot and gave defendant $196 in currency from the cash drawer. There was evidence from a bystander that the clerk "was really shook up" by the robbery; however, the clerk had a history of a nervous condition for which she had received treatment prior to the robbery.

Other facts will be stated later as necessary for understanding of the assignments of error.

All statutory references are to the "Iowa Criminal Code" as contained in Supplement to the Code 1977, unless otherwise stated.

Defendant raises the following issues for review:

(1) Whether theft under §§ 714.1 and 714.2 is a lesser included offense of robbery in the second degree under § 711.3.

(2) Whether the jury instruction relative to defendant's defense of intoxication must specifically state the burden of proof is on the State to disprove that defense.

(3) Whether a defendant brought to trial on the ninetieth day after indictment or filing of the information has been brought to trial "within 90 days" as required by Iowa R.Crim.P. 27(2)(b).

(4) Whether the court improperly instructed the jury as to the elements of robbery.

(5) Whether the instruction defining "serious bodily injury" drawn from § 702.18, and expanded by the court, was unconstitutionally vague and confused and mislead the jury.

(6) Whether mandatory minimum sentencing is unconstitutional.

■ I. *Is theft a lesser included offense under robbery in the second degree?* Defendant requested the court to instruct the jury that theft in the first and third degrees, under §§ 714.1(1) and 714.2(1) and (3), were included offenses of robbery in the second degree, under §§ 711.1 and 711.3. The court refused to do so.

Section 714.1 provides in part:

A person commits theft when the person does any of the following:

1. *Takes possession or control* of the property of another, or property in the possession of another, with the intent to deprive the other thereof. (Emphasis added.)

. . . . .

Section 714.2 deals with various degrees of theft.

Section 711.1 provides:

711.1. ROBBERY DEFINED.

A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:

1. Commits an assault upon another.

2. Threatens another with or purposely puts another in fear of immediate serious injury.

3. Threatens to commit immediately any forcible felony.

It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

Defendant argues that theft is a lesser included offense of robbery; therefore, failure to instruct the jury on theft resulted in reversible error. He urges that the sole distinction between theft and robbery under the new criminal code is that robbery requires one of three additional enumerated acts. Defendant fails to note, however, that *theft*, in turn, requires an additional element which *robbery* does not require. This latter distinction precludes the conclusion that theft is a lesser included offense of robbery.

In *State v. Stergion*, 248 N.W.2d 911, 912 (Iowa 1976) this Court stated that the test of whether one offense is necessarily included in another is resolved through a two-step process. The first step requires consideration of the legal elements and the second step requires an ad hoc factual determination. In turning to the first step, the legal or element test, this Court has stated:

The lesser offense must be composed solely of some but not all elements of the greater crime. The lesser crime *must not* require any additional element which is not needed to constitute the greater crime. (Emphasis added).

*State v. Stewart*, 223 N.W.2d 250, 252 (Iowa 1974) cert. denied 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975).

Application of these principles to the present case reveals that the first part of the two-step test is not met. Theft includes the element of taking, while robbery does not. Theft, the lesser offense, requires an element which is not needed to constitute robbery, the greater crime. Therefore, under *Stewart*, theft is not a lesser included offense of robbery.

Defendant correctly points out that larceny was a lesser included offense of robbery under our prior criminal laws. See §§ 709.1 and 711.1, The Code, 1977. Our cases support this conclusion. See *State v. Fonza*, 254 Iowa 630, 634, 118 N.W.2d 548, 551 (1962); *State v. Kobylasz*, 242 Iowa 1161, 1165–1166, 47 N.W.2d 167, 169 (1951). The legislature, however, has acted to alter the elements of robbery.

Therefore, we hold that theft under §§ 714.1(1) and 714.2 is not an included offense of robbery in the second degree under §§ 711.1 and 711.3.

Defendant's first assignment is without merit.

II. *Must the defense of intoxication instruction specifically say the State must disprove the defense?* During the trial, evidence of defendant's intoxication was presented which would bear on the essential element of specific intent. Subsequently, the defendant asserted to the trial court, and urges here, that any intoxication instruction must specifically say that the State bears the burden to disprove the defense. However, the court gave the jury instruction 9 which reads as follows:

Evidence has been received that at the time and place of the commission of the offense, the defendant was intoxicated. The fact that a person is under the influence of intoxicants does not excuse nor does it aggravate his guilt. However, intoxication may be shown where it is relevant to the person's specific intent at the time of the act charged.

However, even though a person is under the influence of an intoxicant, if he still possesses a mental capacity sufficient to form the intent requisite to the offense charged; or, if he has the intent present in his mind before he falls under the influence of the intoxicant and then commits the act, he will not be absolved of the responsibility for the act. Thus, intoxication is a defense only when it produces a mental disability such as will render the person incapable of forming the intent which is an element of the offenses being considered in these instructions.

In considering the question of the defendant's intoxication, it should be considered along with all the other evidence in the case which bears on the question of intent which is explained in Instruction No. 12.

This instruction is the substance of the Iowa State Bar Association, Iowa Uniform Jury Instruction No. 210 (1978).

▮ We view the instructions in their entirety. *State v. Gambell*, 262 N.W.2d 792, 796 (Iowa 1978); *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977). The instructions read as a whole, make clear the State bears the burden of proof on the essential element of intent. Instruction 9 referred to instruction 12 dealing with intent to commit a theft, an essential element in the crime charged of robbery. Instruction 12, in turn, said such intent must be proved beyond a reasonable doubt. Instruction 15 stated the prosecution must prove each of the robbery elements, including that defendant intended to commit a theft, beyond a reasonable doubt. Finally, instruction 1 provided the State had the burden of proving beyond a reasonable doubt each allegation of the charge.

We conclude the instructions made clear the burden of proof as to defendant's intent did not leave the State, even though defendant relied on an intoxication defense.

Defendant's second assignment fails.

▮ III. *Was defendant denied a speedy trial under Iowa R.Crim.P. 27(2)(b)?* The trial information charging defendant was filed on January 25, 1978. Defendant did not, thereafter, waive his speedy trial rights; his trial began on April 25, the ninetieth day following filing of the information.

Iowa R.Crim.P. 27(2) provides:

2. Speedy trial. It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties. Applications for dismissals under this subsection may be made by the county attorney or the defendant or by the court on its own motion.

. . . . .

b. If a defendant indicted for a public offense has not waived his right to a speedy trial he must be brought to trial within ninety days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

. . . . .

The day of trial defendant moved to dismiss the case on the ground he had not been brought to trial "within 90 days" after January 25, as required by rule 27(2)(b). The court overruled the motion.

Defendant would have this court construe rule 27(2)(b) to mean that a defendant must be brought to trial by the eighty-ninth day following indictment in order to fall *within ninety days*. In a prior speedy trial computation, however, this court has construed the designated statutory time to set the final permissible date of trial.

Section 4.1(22), The Code, provides that in computing time, the first day shall be excluded and the last day included.

In *State v. Johnson*, 216 N.W.2d 335, 336 (Iowa 1974), we reviewed the case of a defendant brought to trial on the sixty-third day following demand for a speedy trial. Although the defendant was statutorily entitled to be brought to trial *within sixty days* under § 795.2, The Code, 1971, we held the trial on the sixty-third day chronologically permissible because:

> The sixtieth day . . . was a Saturday . . . the following day . . . was a Sunday and the next day, Monday . . . was a legal holiday . . . .

*Johnson* demonstrates that where the statutory terms *within sixty days* were used, the *sixtieth* day was part of the proper time computation. Although the prescribed time has been altered to its current form, requiring trial *within ninety days*, the phraseology of rule 27(2)(b) is substantially similar to § 795.2. There is no reason to construe *within* ninety days to exclude the ninetieth day itself when precedent suggests *within sixty days* did not exclude the sixtieth day.

In *Jensen v. Nelson*, 236 Iowa 569, 19 N.W.2d 596 (1945) we defined "within" as meaning "not beyond, not later than, any time before, or before the expiration of." In reading *Jensen* with rule 27(2)(b), "within ninety days" means "not beyond, not later than, any time before, or before the expiration of ninety days." Application of this definition to the present facts shows Holmes' trial began on the morning of April 25, which was the ninetieth day after the information was filed. He was brought to trial "before the expiration" of the ninetieth day; therefore, he was brought to trial within ninety days after the information was filed.

We hold that defendant was brought to trial in compliance with rule 27(2)(b) within ninety days after the information was filed.

There is no merit in defendant's third assigned error.

■ IV. *Was the instruction on the elements of robbery legally sufficient?* Defendant claims error in instruction 15 regarding threats made by defendant during commission of the crime; however, he made no objections to that instruction in the trial court and raises the claimed error for the first time on appeal. He did object to three other instructions on unrelated subjects prior to their submission to the jury.

Defendant failed to preserve error in the trial court on this issue, which presents nothing for our review on appeal. *State v. Wellington*, 264 N.W.2d 739, 742 (Iowa 1978); *State v. Sallis*, 262 N.W.2d 240, 248 (Iowa 1978); *State v. Brown*, 172 N.W.2d 152, 159 (Iowa 1969).

V. *Was the instruction defining "serious injury" unconstitutionally vague in violation of due process?* In instruction 13 the court gave the substance of Iowa Uniform Jury Instruction No. 219 as follows:

> With regard to element number two of Instruction No. 15, you are instructed that immediate serious injury is defined as a disabling mental illness or a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or im-

pairment of the function of any bodily member or organ.

A disabling mental illness means an illness or condition which cripples, incapacitates, weakens or destroys a person's normal and usual mental functions.

A bodily injury is that which creates a substantial risk of death or such an injury which or is likely to cause a real hazard of danger of death.

A bodily injury is also that which causes serious permanent disfigurement or which causes or produces a deforming or mutilated condition of a person.

A bodily injury is also that which causes a protracted loss or impairment as would prolong or extend the loss or use of a member or organ, or which would weaken, damage, or reduce the use of a member or organ of a person.

The instruction was based, in part, on § 702.18 which provides:

"Serious injury" means disabling mental illness, or bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

At trial defendant objected to the instruction as being vague due to use of several terms. He claimed vagueness in the terms "disabling mental illness," "normal and usual," and "substantial" relative to risk of death. He suggested no specific alternative language and proposed no definitions for the claimed vague words.

He contends error occurred in giving the instruction with these terms, thereby confusing the jury.

It is somewhat unclear whether defendant is constitutionally challenging § 702.18, from which the court drew part of its instructional definition, or the additional words by which the court expounded on the statutory definition. In either case, however, defendant's contention must fail. We turn first to the statutory language.

Defendant alleges use of the terms "disabling mental illness" and "substantial risk of death" to define serious bodily injury are void for vagueness. These terms, however, are drawn from § 702.18 which defines serious injury statutorily. A constitutional vagueness attack on § 702.18 was never raised in trial court, although defendant did make a record objecting to the instruction itself.

■ We have repeatedly held that constitutional issues not presented to the trial court can not be presented for the first time on appeal. *State v. Uebberheim*, 263 N.W.2d 710, 712 (Iowa 1978); *State v. Jacoby*, 260 N.W.2d 828, 834 (Iowa 1977). Therefore, any constitutional attack on *statutory* language is precluded.

■ Defendant's assertion of vagueness extends beyond the utilization of the statutory language of § 702.18, however, and encompasses the court's additional wording in further defining "disabling mental illness." Defendant claims the court's terms "normal" and "usual" are similarly vague. Although this objection was properly preserved on the trial record, the contention is without merit.

We have held that relative to words which are of ordinary usage and generally understood, further instructional definition is not required. Cf. *State v. Kelly*, 224 N.W.2d 456, 458 (Iowa 1974) ("lawful authority" and "lawful command" have common and generally accepted meaning); *State v. Graham*, 203 N.W.2d 600, 603 (Iowa 1973) ("improperly" is of ordinary usage and generally understood); *State v. McCall*, 245 Iowa 991, 1002, 63 N.W.2d 874, 880 (1954) ("sexual intercourse" is of clear meaning and common knowledge). The challenged terms "normal" and "usual" would seem to fall within this category.

VI. *Is mandatory minimum sentencing unconstitutional?* In his final assignment of error, defendant mounts a four-pronged constitutional attack on the statutory sentencing structure under which he was sentenced for a term not to exceed ten years. Three separate statutes are involved in this constitutional attack: (1) section 902.4 which precludes reconsideration of a convicted felon's sentence where a minimum

sentence of confinement is imposed, (2) section 902.7 which imposes a five-year minimum mandatory sentence without parole for a forcible felony committed while the perpetrator represented that he or she was in the immediate possession and control of a firearm, displayed a firearm in a threatening manner, or was armed with a firearm and (3) section 907.3 which precludes deferred judgment or suspended sentence where a forcible felony constitutes the underlying conviction. This statutory scheme, defendant alleges, denies him equal protection and due process while violating the doctrine of separation of powers and imposing cruel and unusual punishment.

Defendant raised these contentions in a pretrial motion to dismiss and in a motion in arrest of judgment.

 Two of defendant's four constitutional challenges were recently addressed in *State v. Hall*, 227 N.W.2d 192, 194 (Iowa 1975), in which we rejected equal protection and cruel and unusual punishment attacks on a controlled substance statute, precluding deferred judgment or suspended sentence and, thereby, requiring mandatory imprisonment. We believe the equal protection analysis of *Hall* controls the constitutional disposition of this challenge to minimum mandatory sentencing for use of firearms. Governmental interest in deterring use of firearms in commission of crimes would seem of equally legitimate legislative concern as deterring drug abuse and sales. See *id.* at 194; compare with *State v. Freeman*, 223 Kan. 362, 574 P.2d 950, 957 (1978). Our cruel and unusual punishment analysis of *Hall*, however, has been followed by recent Supreme Court decisions on the mandatory death penalty and requires reevaluation.

Although defendant argues the Supreme Court decisions on mandatory death penalties, including *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); and *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), require a finding that the mandatory minimum sentence provision

of § 902.7 be ruled unconstitutional, we perceive no such federal mandate. Defendant argues that the Supreme Court generally has required individualized sentencing determinations; however, we do not believe these cases can be read to extend to minimum mandatory sentencing of so brief a duration as reflected in § 902.7. In *Woodson v. North Carolina*, the plurality indicated it was the peculiar nature of the death penalty which mandated individualized sentencing and said:

> While the prevailing practice of individualized sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires [the] consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death. (Emphasis added.)

*Id.* 428 U.S. at 304, 96 S.Ct. at 2991, 49 L.Ed.2d at 961.

Courts in other jurisdictions have upheld minimum mandatory sentencing statutes against constitutional attack, despite federal case law development. Two jurisdictions have sustained validity of five-year minimum mandatory sentencing for use of a firearm in commission of a felony while specifically distinguishing the death penalty federal case law. See *State v. Atkinson*, 19 Wash.App. 107, 575 P.2d 240, 245 (1978); *State v. Williams*, 115 Ariz. 288, 564 P.2d 1255, 1256 (1977). Other jurisdictions have upheld minimum mandatory sentencing for use of a firearm in commission of a felony against cruel and unusual punishment attacks where no parallel to the death penalty precedent has been drawn. See *State v. Freeman*, 574 P.2d at 957; *Sowell v. State*, 342 So.2d 969 (Fla.1977).

We, therefore, hold that imposition of the statutory five-year minimum mandatory sentence for involvement of a firearm in commission of a felony does not inflict cruel and unusual punishment. We turn, now, to

consideration of defendant's remaining constitutional challenges.

Defendant asserts that statutory preclusion of probation violates separation of powers by limiting the authority of the judiciary to exercise discretion in granting or denying probation. We have held, however, that our judiciary holds no inherent power to grant probation. *State v. Wright*, 202 N.W.2d 72, 76 (Iowa 1972); see *State v. Drake*, 259 N.W.2d 862, 864 (Iowa 1977). The power to grant probation is statutorily conferred; therefore, statutory preclusion of probation cannot infringe on judicial authority to exercise discretion in the matter. Accord *State v. Motley*, 546 S.W.2d 435, 437 (Mo.App.1976); *State v. King*, 330 A.2d 124, 128 (Me.1974); *Black v. State*, 509 P.2d 941, 942–943 (Okl.Cr.1973); *State v. Morales*, 51 Wis.2d 650, 187 N.W.2d 841, 843 (1971).

Finally, defendant argues that statutory preclusion of probation violates due process. In similar challenges to mandatory minimum sentencing statutes other jurisdictions have reasoned that, there being no constitutional right to probation, a defendant could not base a due process claim on the refusal of the legislature to permit probation in his case. See *State v. Morales*, 187 N.W.2d at 843. We have recognized that probation is governed by statute, *State v. Wright*, 202 N.W.2d at 76–77, and find this reasoning persuasive.

We have considered all issues raised in this appeal and find defendant's contentions without merit.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

I concur in the result and all of the opinion except the basis of the court's rejection of the claim that the mandatory sentence requirement of section 902.7, Code Supp.1977, infringes the separation of powers precept in Ia.Const. art. III, section 1 (1857). I believe courts have inherent common-law power to defer the imposition of

sentence unless barred from doing so by statute. See *State v. Wright*, 202 N.W.2d 72, 81–82 (Iowa 1972) (special concurrence). The legislature has the power to deviate from the common law and has done so here. Therefore the separation of powers clause was not violated.