STATE of Iowa, Appellee,

v.

Willie Lee DUNSON, Appellant.

No. 87–1412.

Supreme Court of Iowa.

Dec. 21, 1988.

Raymond E. Rogers, Acting Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., James Metcalf, County Atty., and Daniel B. Shuck, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

This appeal from a conviction of assault with intent to inflict serious injury involves the propriety of the district court's refusal to give a self-defense instruction and to admit evidence of the victim's subsequent violent act. We reverse and remand for a new trial.

## I.  Background Facts and Proceedings.

On April 18, 1987, Willie Lee Dunson, the defendant, became embroiled in a fight with his live-in girlfriend Lucille O'Neal. The fight started at the residence of a friend when Dunson struck O'Neal with a belt. After the couple was separated by several others who were present, O'Neal went into the bedroom and returned with a vase, which she began to swing at Dunson. Dunson took the vase from O'Neal and struck her several times with it. As a result of the blows from the vase, O'Neal sustained injuries to the back of her head.

In connection with the incident, Dunson was charged with assault with intent to inflict serious injury. *See* Iowa Code § 708.1(1) (1987). Shortly before the jury was picked to try the case, the district court allowed Dunson to file a belated notice of·self-defense.

During the trial, the district court refused to admit evidence that following the fight, O'Neal had run over Dunson with her automobile. At the close of the evidence, the court rejected Dunson's request for a jury instruction on self-defense.

The jury returned a guilty verdict, and Dunson was given a two-year indeterminate sentence. This appeal followed.

On appeal Dunson raises two issues: (1) whether the district court erred in refusing to give his requested jury instruction on self-defense, and (2) whether the district court erred in refusing to allow the jury to hear evidence that after the fight O'Neal ran over Dunson with her automobile.

## II.  Refusal to Give Self–Defense Instruction.

The defense of self-defense is statutorily denominated as a defense of justification. The defense is codified in Iowa Code section 704.3, which provides: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force."

Iowa Code section 704.6 sets forth the circumstances in which the defense is not available. The statute pertinently provides that it is not available to

[o]ne who initially provokes the use of force against oneself by one's unlawful acts, unless:

a.  Such force is grossly disproportionate to the provocation, and is so great that the person reasonably believes that the person is in imminent danger of death or serious injury or

b.  The person withdraws from physical contact with the other and indicates clearly to the other that the person desires to terminate the conflict but the other continues or resumes the use of force.

Iowa Code § 704.6(3).

In any prosecution for assault the State is required to prove beyond a reasonable doubt that the defendant was not acting in self-defense. *State v. Sharkey,* 311 N.W.2d 68, 72 (Iowa 1981). Substantial evidence in the record from any source justifies submission of a self-defense instruction. *State v. Fisher,* 246 N.W.2d 918, 920–21 (Iowa 1976). If there is such substantial evidence, the district court has a duty to give a requested instruction on the defense. *See State v. Jeffries,* 430 N.W.2d 728, 733 (Iowa 1988).

Dunson argues that there was substantial evidence that would justify submitting the defense, even though the jury could find that he initially provoked the

force used against him. He relies on the two exceptions in section 704.6, which he asserts were supported by substantial evidence. He therefore concludes the district court erroneously refused his requested instruction on the defense. We agree.

Brenda Houston, one of the witnesses to the fracas, testified that after Dunson swung his belt at O'Neal, Houston and her son separated the two. At this point, according to the witness, O'Neal went into the bedroom and returned with a glass vase. From there we pick up the action from Houston's testimony:

Q. Now, later you said Lucille came out of the bedroom with a vase. A. Right.

Q. And I believe at that time you said that she swung at him with that vase that was inside the house. Okay. Did she ever swing at him again with the vase or just once? A. Yes, she swung at him outside on the porch with it. That's when he took it from her.

Q. So did she swing at him two times or more than two times? A. I didn't watch the whole incident. It could have been more than twice. I only know of twice, that's what I saw.

. . . .

Q. Did you have an—opportunity to check Willie over after this occurred to see if he had any cuts or—A. No. I didn't check Willie over. I was more concerned with my cousin, Lucille. But I could see, you know, that he had scratches and stuff and slight bleeding on his face.

Q. Okay. That you believed to be from scratches from her fingernails. A. Yeah.

Q. Well, now . . . when would Lucille have had an opportunity to scratch Willie? A. While they were on the porch.

Q. Were they close together? A. Yes.

Q. And she was scratching or hitting at Willie, and he was hitting at her with the vase? A. Right.

Q. So this was, I guess, not just Willie hitting her but it was back and forth between the two of them? A. Right.

Under a proper instruction on self-defense, a jury could reasonably find that the force O'Neal used against Dunson was grossly disproportionate to his initial provocation. O'Neal admitted that the blow from the belt "just stung" and "didn't hurt much." In contrast, she attacked Dunson with a glass vase.

The jury could also reasonably find from Houston's testimony that after Dunson wrestled the vase from O'Neal, mutual combat broke out. O'Neal was hitting Dunson and scratching at his face while Dunson was striking her with the vase. In these circumstances, the jury could further find that the disproportionate force was so great that Dunson reasonably believed he was in imminent danger of serious injury. As to this latter issue, we agree with the following reasoning in *People v. Chatman*, 102 Ill.App.3d 692, 698, 58 Ill.Dec. 315, 320, 430 N.E.2d 257, 262 (1981):

If some evidence is presented sufficient to raise the issue of self-defense, the State must prove defendant guilty beyond a reasonable doubt both as to that issue and each element of aggravated battery. However, if defendant unreasonably believed that the stabbing of the victim was necessary to prevent his own imminent death or great bodily harm, the assertion of self-defense cannot prevail. The trier of fact determines whether the use of force by the accused was based upon a reasonable apprehension of death or serious bodily harm in light of his assessment of the situation at the time he used such force against another. . . .

(Citations omitted.) *See also State v. Knoll*, 712 P.2d 211, 215 (Utah 1985) (although defendant had disarmed victim before assault, court found there was enough evidence in record to submit self-defense instruction). In short, under the facts here, it was the jury's and not the court's function to determine whether Dunson acted in self-defense.

This case is far different from *State v. Campbell*, 214 N.W.2d 195 (Iowa 1974), a case the district court and the State believe is controlling. Campbell and the victim were witnesses to a fist fight between two

motorists. The victim, an off-duty police officer who failed to identify himself as such, pulled his service revolver to restore peace. Campbell and his friend disarmed the victim. Learning that the victim was a police officer, Campbell began beating him with the revolver. We said Campbell was not entitled to a self-defense instruction because there was no issue of it under the evidence. We noted that once the victim had been disarmed, there was no longer any threat of harm to Campbell and, absent that threat, no reason to beat the victim. *Id.* at 196–97. The critical difference between the two cases is the force used once the victim was disarmed. In *Campbell,* there uncontrovertedly was no such force. Here there was, and it was for the jury to determine whether the defendant was reasonable in using physical force to prevent further aggression.

■ We also think there was substantial evidence as to the withdrawal exception in section 704.6(3)(b). This exception codifies the rule, recognized in *State v. Huemphreus,* that even though the defendant may have initially provoked combat, the defendant's right of self-defense will revive, and his or her actions will be held justified upon the ground of self-defense, if the defendant has withdrawn from combat in good faith as far as possible and has clearly announced a desire for peace. 270 N.W.2d 457, 462 (Iowa 1978). Notice of withdrawal "may consist of either conduct or words sufficient to furnish reasonable grounds for the adversary to recognize an intention to call off hostilities." *Id.* at 461.

On this point we again refer to Houston's testimony:

Q. Now, when you stepped between Willie and Lucille—you and your boy; is that right? A. Yes.

Q. This was after Willie had swung the belt at Lucille? A. Right.

Q. You were able to separate the two of them? A. Right.

Q. And you were able to move Willie back onto the porch? Is that where he moved to? Or where did he go? A. He was still in the living room but passed—

the television is off to your left when you come into the door.

Q. Did you have any problem separating the two of them? A. Not really.

Q. You were able to just step between them and your boy took—A. No, I had to push him back a little bit, yes. But it didn't take a lot of force.

Q. You said you're five two? A. I thought I was, but she's taller than me so.

Q. Okay. Do you consider yourself a very—real strong woman, meaning physically strong? A. I can hold my own.

Q. Now, if Willie was mad and really wanted to get Lucille, do you think you would have been able to hold him off? A. No.

Q. And he, in a sense, went with you when you separated—A. Right.

Q. Now, later you said Lucille came out of the bedroom with a vase. A. Yes.

From this testimony, we think the jury could have reasonably concluded two things: first, that Dunson was indicating to Lucille his intention to withdraw from further physical contact; and second, that Lucille was having none of that but wanted to continue the fight and get her licks in. Had Dunson wanted to continue, it is apparent from Houston's testimony that the defendant was strong enough to resist Houston's efforts and continue the fighting.

Under the facts here, we think Dunson was clearly entitled to an instruction on self-defense. The district court erroneously refused his requested self-defense instruction, requiring reversal of Dunson's conviction.

III. *Refusal to Admit Evidence of Victim's Subsequent Violent Act.*

Throughout the trial, the district court refused to permit evidence that shortly after Dunson struck O'Neal and left the house, she followed him and ran over him with her automobile. The district court repeatedly expressed an inability to understand the relevance of the incident to the charge against Dunson. Dunson claimed

the act was admissible to show O'Neal's aggressive and violent character at the time of his assault upon her. Because our disposition of the case calls for a retrial, the district court is certain to face the issue again. We therefore consider Dunson's second assignment of error.

█ Whether evidence of a victim's subsequent acts is admissible in a criminal case to prove the victim's aggressive and violent character at the time of the earlier crime is a case of first impression for this court. Two evidentiary rules bear directly on this issue. Iowa Rule of Evidence 404(a) pertinently provides:

(a) *Character Evidence Generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(2) *Character of Victim.*

(A) In Criminal Cases. Subject to Iowa R.Evid. 412 [Sexual Abuse Cases; Relevance of Victim's Past Behavior], evidence of a pertinent trait of character of the victim of the crime offered by an accused. . . .

Iowa Rule of Evidence 405(b) pertinently provides:

(b) *Specific Instances of Conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

All relevant evidence is admissible unless statutes, rules of procedure, or constitutional or policy considerations require its exclusion. Iowa R.Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R.Evid. 403.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. The concept of "materiality" is implicit in the phrase "that is of consequence to the determination of the action." *See id.; see also* Iowa R.Evid. 401 committee comment. We have previously defined "materiality" as that which "ordinarily relates to the pertinency of offered evidence to the issues in dispute or to the issue of credibility." *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973); Iowa R.Evid. 401 committee comment.

We think rules 404(a) and 405(b) permit the admission of the evidence in question. The evidence relates to a character trait of the victim: her aggressiveness and propensity for violence. *See* Iowa R.Evid. 404(a)(2). The evidence was offered by the defendant. *See id.*

Next, rule 405(b) does not limit admissibility to past instances of conduct. Recently, one court ruled that evidence of a victim's subsequent acts is admissible in a criminal case to prove the victim's aggressive and violent character at the time of the earlier crime. *People v. Shoemaker,* 135 Cal.App.3d 442, 448, 185 Cal.Rptr. 370, 373 (1982) (similar to the Iowa rule, California evidence code permits admission of evidence of subsequent conduct of the victim in a criminal case to prove victim's character on a specified earlier occasion). In so ruling, the *Shoemaker* court, 135 Cal.App. 3d at 447, 185 Cal.Rptr. at 373, quoted with approval the following two passages from Wigmore:

Character at an earlier or later *time* than that of the deed in question is relevant only on the assumption that it was substantially unchanged in the meantime, i.e. the offer is really of character at one period to prove character at another, and the real question is of relevancy of this evidence to prove character, not of the character to prove the act.

1 J.H. Wigmore, *Evidence* § 60, at 463 (3d ed. 1940).

[T]here is no difficulty from the point of view of the relevancy of character; a man's trait or disposition a month or a year after a certain date is as evidential

of his trait on that date as his nature a month or a year before that date; because character is a more or less permanent quality ... we may make inferences from it either forward or backward.

5 J.H. Wigmore, *Evidence* § 1618, at 595 (Chadbourn ed. 1974).

Like the California Court of Appeals, we find Wigmore's views compelling. We therefore approve the rule adopted in *Shoemaker.*

■ Applying this rule in Dunson's case, we think that the evidence in question was material to several elements of his defense. *See* Iowa R.Evid. 405(b). Because the evidence of O'Neal's subsequent act was consistent with her earlier violent behavior, the evidence might, to the jury, have shown that Dunson reasonably believed he needed to defend himself at the earlier time, that he had indeed withdrawn from physical contact during the fight with the vase, or that O'Neal's responsive acts were grossly disproportionate to the provocation. *See* Iowa Code §§ 704.3, 704.6.

For example, the evidence gave credence to Dunson's belief that he was, at the earlier time, in imminent danger of serious injury. O'Neal's act with the automobile was consistent with her violent behavior toward Dunson at other times. While they were living together, she admitted, they were "always fighting." We think the jury could have seen the evidence in question as part of the pattern of aggressive, even violent, behavior that apparently was a way of life to Dunson and O'Neal.

In addition, had the jury heard the evidence, it might have found that Dunson, knowing O'Neal's violent nature, terminated his assault upon O'Neal before she left the room to get the vase. The jury might also have found that her attack upon him with the vase was grossly disproportionate to his initial provocation, just as the grossly violent act with the automobile was.

We do not, however, intend by what we say to decide the issue in advance. Depending on the facts before it at the time the evidence is offered, the district court will still need to exercise its discretion as to the evidence's admissibility under rule 403.

IV. *Disposition.*

Substantial evidence in the record justified submission of Dunson's requested self-defense instruction. Because the district court refused the instruction, Dunson's judgment of conviction and sentence must be reversed, and the case must be remanded for a new trial. Evidence of the victim's subsequent vehicular assault on Dunson was relevant to his defense of self-defense. But the district court must still exercise its discretion as to the evidence's admissibility under Iowa Rule of Evidence 403.

REVERSED AND REMANDED.